### BURWELL J. THOMPSON v. CHARLTON PAYNE.

The expression "due diligence" used in Art. 2522, (Hart. Dig.) held to have the same meaning as that given to it in the first Section of the Act, viz: the bringing suit at the first Term; and if not at the first, then with cause shown at the second Term after the accrual of the cause of action.

Suit may be brought simultaneously against the maker and the assignor of an unnegotiable instrument.

Instructions to the jury will not be deemed erroneous because they do not embrace every aspect in which the law might have been presented to them.

Error from San Augustine. Tried below before Hon. A. O. W. Hicks.

Thompson, the appellant in error, and one White appear to have had some connection with each other in carrying on a mail contract. At the instance of Thompson, J. M. Ardrey consented to cash a draft on the Post Office Department, which he said he and White could draw for mail service. Shortly afterwards White obtained the money from Ardrey, and gave a draft on the Department to which he signed his own name and that of Thompson. At the same time he executed an obligation signed in the same manner, payable to Ardrey in the event the draft should be dishonored or payment refused at the Post Office Department. The draft was not paid at the Department. The refusal to pay it was communicated to Ardrey by W. F. Phillips, Auditor of the Treasury for the Post Office Department.

This obligation was transferred by Ardrey without recourse to L. G. Gilliam who assigned it to the defendant in error, who instituted suit on it against Thompson and White, the makers, and Gilliam as endorser. Suit having been dismissed as to White, judgment was rendered against Thompson and Gilliam, to which Thompson alone prosecutes a writ of error.

*B. J. Thompson,* for plaintiff in error.

*Moore & Walker,* for defendant in error.

ROBERTS, J., did not sit in this case.

HEMPHILL, CH. J. The plaintiff in error, by the elaborate brief of his counsel, contends in the first place in substance and effect that there was error in the misjoinder of Lemuel W. Gilliam, the assignor, with the makers of the instrument as defendants in the suit. The assignor has not joined in the writ of error and does not complain of the injury arising from this supposed misjoinder, and it would seem that if he acquiesces, if he suffer judgment to be entered against him the maker, who was liable at all events, can have no just cause of complaint. But admitting that the instrument sued upon was not negotiable by Commercial Law or usage, yet there was no error in the joinder of the makers and the assignor in the same action. Art. 670 declares that no person shall be sued as endorser, as guarantor, or as security, unless suit shall have been or is simultaneously commenced against the principal, except, &c., and by Art. 705 the principal and endorser, or surety, &c., may be joined in the same suit, &c., &c., and by Art. 2525 it is enacted that the assignor or endorser of any of the before-mentioned instruments (including both negotiable and unnegotiable instruments) may be sued without the necessity of previously suing the drawer, maker, or obligor, when he may either reside beyond the limits of the Republic or in such part of the same that he cannot be reached by the ordinary process of law, or when he may be notoriously insolvent. The language of these Articles is sufficiently broad (and such is believed to have been the construction) to embrace the assignors or endorsers of negotiable as well as of unnegotiable instruments. By Art. 2523 the assignee is au-

thorized to recover from any previous assignor, and the only limitation on this right is that imposed by Art. 2522, namely: that the assignee shall use due diligence to collect the debt (from the maker.) The question then arises as to what is due diligence? and it would seem from the cases referred to by the brief in the Kentucky Reports that the due diligence at Common Law by an assignee of an instrument not negotiable, which would fix the liability of an assignor, would be the institution of suit against the maker at the first Term of the Court after assignment and prosecution of it diligently to the return of *nulla bona* on the execution. (9 Dana, 45 ; 1 B. Monroe, 305 ; 4 J. J. Marshall, 303.) In Smallwood v. Woods, (1 Bibb, 542,) it is intimated that the decision in Kentucky on this subject was, in its inception, wrong ; that by the Common Law an assignor was not liable to make the contract good in the event of the insolvency of the maker, where there was no unfairness or misrepresentation referring to (1 Pennington New Jersey R. 20) in support of this position ; but that the rule in Kentucky had become settled by which men governed their contracts and could not be changed. The rule in Kentucky that the maker or obligor should be pursued to insolvency before suit could be brought against the assignor, is founded on reason and justice, and it is one which pervaded our former system of jurisprudence, as a general rule fixing liability on persons standing in the relation of surety only after the effects of the principal were discussed and found insufficient. But this rule was not continued on the introduction of the Common Law, but in its stead we find the miserable and inefficient substitute that suit must first or at least simultaneously be commenced against the principal, and where surety and principal are joined in the same suit judgment, with certain exceptions, shall not be rendered against the surety unless entered at the same time against the principal. Such provisions leave it at the option of the Sheriff to collect from either the principal or surety. This, it is believed, has been remedied, at least to some extent, by the Legislature at its

late session, and we will now return to the meaning and intention of the term due diligence in Art. 2522, (Hart. Dig.) The Act of January 25th, 1840, as its preamble shows, was intended to dispense with the necessity of protesting negotiable instruments for dishonor, and of giving notice thereof; and to regulate the assignments of all written instruments. In relation to negotiable instruments, (Art. 2520,) it was declared that demand, protest and notice should not be necessary to fix the responsibility of the drawer, endorser, or assignor, but provided that these parties should be released unless the holder of the instrument should use due diligence to collect the same, and that diligence was defined to be the institution of a suit against the drawer, or maker, at the first Term of the Court after the accrual of the right of action, or at the second Term if good cause could be shown why suit was not instituted before the first Term. Here a statutory diligence was substituted for that known to Commercial Law, and what acts would constitute that diligence were enumerated.

The next two sections (Arts. 2521–2522) after declaring in substance that the assignees of instruments negotiable or unnegotiable may maintain actions in their own name, and that the holders of negotiable instruments past due, and also of those not negotiable, shall allow discounts previous to notice of the assignments, and then it is declared that an assignor shall not be held as security for the payment of the instrument unless the assignee shall use due diligence to collect the same. We think it plain that the Legislature intended to give the same meaning to the term due diligence in this connection that was applied to them in the first Section of the Act, viz : the bringing suit at the first Term ; and if not at the first, then, with cause shown, at the second Term after the accrual of the cause of action.

The Statute changed the acts which would fix the liability of the drawer or endorser of negotiable instruments and substituted suit, styling such suit due diligence.

The assignor of an unnegotiable instrument may not have been responsible at Common Law, but the Statute has declared that he shall be liable on the exercise of due diligence by the assignee to collect from the maker—can there be a doubt but that due diligence means the same thing in both instances, viz : by suit, and this view is supported by the provision applicable to assignors and endorsers of all instruments, whether negotiable or unnegotiable ; that there shall be no necessity of suing the maker in the event of his absence from the State or notorious insolvency. We are of opinion that there was no error in bringing the suit simultaneously against the maker and assignor of the instrument.

It is also objected that the Court omitted to give instructions necessary to the law of the case. This is not a ground of error. In Levi v. Wright, (18 Tex. R. 317,) it is said in substance that instructions will not be deemed erroneous because they do not embrace every aspect in which the law might have been presented to the jury. If the charge of the Court was thought to be imperfect in its presentation of the law, it was the right of the party to supply the supposed imperfection by asking the proper instruction.

Whether the execution of the instrument by the plaintiff in error was proven, or not, depended on the fact of White's having authority to sign his name.

This was a question of fact for the jury upon which they were properly instructed by the Court. Their verdict is supported, or at least it is not without or contrary to the evidence.

The fact that the draft was presented and rejected by the Post Office Department was sufficiently established by proof. It cannot be supposed that such draft should be presented by a Notary and protested for non-acceptance, with notice given. The letter giving notice of the dishonor of the draft purported to be from the Auditor of the Treasury for the Post Office Department, signed Wm. F. Phillips, Auditor ; and

Mr. Kinsey testified that he had been in correspondence with the Post Office Department in forwarding drafts drawn by Mail Contractors upon the Post Master General ; that he had received many letters from the Department, and that he recognized the signature of Wm. F. Phillips to the letter as a genuine one.    This is equivalent to saying that his correspondence with the Department on the subject of drafts, was through Mr. Phillips, and consequently that his statements are to be taken as official in this character.

No injury could have arisen from the sickness of the leading counsel.    The gentleman who acted as his assistant was fully competent to manage and sustain the defence had it been a meritorious one.

We are of opinion that there was no error and that the judgment be affirmed.

Judgment affirmed.