## ABNER G. BEAZLEY v. W. B. DENSON.

1. Though an appellant who has failed to object to instructions on the trial cannot generally avail himself of error in the charge on appeal, yet when the verdict of the jury has been made to turn upon an erroneous charge, and the judgment upon the merits is thus founded in error, it will be reversed, though the charge was not complained of at the time.

2. The formal burden of proof in trials directly upon the probate of the will, whether in the court of probate or upon appeal, is upon the executor, or those who set up the will.

3. The presumption in favor of the sanity of the maker of a deed or ordinary contract does not apply on the probate of a will.

4. When the estate is disposed of by will changing the course of descent and distribution, proof of the mental capacity of the testator has always been exacted as essential to the establishment of the will.

5. Objections to the venue of a cause, made for the first time on a motion for new trial, and based on the alleged unconstitutionality of the act creating the county in which the cause was tried, will not be considered on appeal.

6. See opinion in this case for facts concerning the misconduct of a jury which are pronounced inconsistent with a pure administration of law.

APPEAL from San Jacinto. Tried below before the Hon. J. R. Burnett.

The will of Col. Hamilton Washington, who had never married, bequeathing his estate to his only sister, Mrs. Mary Beazley, since dead, the wife of appellant, was probated in the County Court of Polk county, at its August term, A. D. 1868. That will was dated May 19, 1860. Pending the application for probate, F. M. Sansom and Douglass Mitchell presented to the court another instrument, alleged to be the will of Col. Washington, bearing date June 6, 1868, in which they were named as executors. By that instrument W. B. Denson, appellee, a stranger to the blood, was given the major portion of the estate, and Mrs. Beazley named as residuary legatee. The amount bestowed on her by the last named instrument was of trifling value. The capacity of the testator

on the sixth of June, A. D. 1868, was denied by Mrs. Beazley. The will of 1868 was adjudged invalid, and the will of May 19, 1860, probated. From that judgment Denson appealed to the District Court of Polk county. The case was tried at the October term, A. D. 1870, and a verdict rendered, on which judgment was entered, again establishing the will of 1860. From that judgment an appeal was taken to the Supreme Court, which reversed the judgment of the District Court, Judge Evans dissenting. (34 Texas, 193.) The case was again tried at the Fall term, 1871, in the court below, and resulted in a verdict establishing the will of 1868, from which Beazley appealed.

The following is a portion of the lengthy charge given on the trial:

"This suit is an appeal from the County Court of Polk county, on a judgment admitting to probate an alleged will of Col. Hamilton Washington, deceased, dated May 19, 1860. The plaintiff, Denson, claims that said alleged will is not the last will and testament of Col. Washington, but that the alleged will and codicil, dated respectively June 6 and June 8, 1868, constitute his last will and testament. * * * You will first inquire into the validity of the alleged will and codicil, dated June, 1868, and determine whether they constitute the last will and testament of the testator, Washington. The law of our State provides that every person twenty-one years or upwards, being of sound mind, shall have power, at his or her will and pleasure, by last will and testament, in writing, to devise all the estate he or she may at the time of his or her death, provided such will and testament be signed by the testator, or by some other person in his or her presence, and by his or her direction, and be attested by two or more credible witnesses above the age of fourteen years, subscribing their names, in his or her presence; but if the will be wholly written by the testator, no subscribing

27

witnesses are necessary. Every man is presumed by the
law to possess a sound mind until the contrary be shown
by evidence, and fraud or undue influence cannot be pre-
sumed, but must be proved. If, then, the plaintiff, Den-
son, has shown by the evidence that the alleged will and
codicil, dated in June, 1868, were wholly written by the
testator, Col. Washington, or if not wholly written by
him were signed by him, and were attested by two credible
witnesses above the age of fourteen years, who subscribed
their names in his presence, then you will find in your
verdict that said will and codicil constitute his last will
and testament, unless the defendant, Beazely, has satisfac-
torily shown by the evidence that said will was so written
or signed by the testator when of unsound mind, or that
it was procured by the fraud of plaintiff, or by his use of
undue influence exercised by him over the testator, as
will be hereafter explained.

"As before stated, the law presumes every person is
of sound mind, and it therefore devolves on the defend-
ant, who alleges insanity or unsoundness of mind, to es-
tablish the fact."

The evidence was quite voluminous, presenting some
features of novel interest, but further reference to it, both
in the statement of the case and briefs, is omitted as not
necessary, in view of the issues, to the discussion of which
the opinion is confined.

*B. C. Franklin*, for appellant.—1.. That the court
erred in the charge, as applicable to the pleading and
facts in this case, it seems to me can be made manifest by
stating the following proposition :

The allegation that Col. Washington was of sound
mind at the time of making his will, in June, 1868, was
not made ; it was a necessary allegation, and had to be
proved.

Again, the charge assumes that the onus rested on the

party opposing the probate of the will, of establishing the insanity of the testator. I presume that the judge of the District Court, during the confusion and hurry of the trial, and in the absence of authorities, overlooked the provisions of Sections 75, 76 and 77, of the act prescrib- ing the mode of proceeding in District Courts in matters of probate. (Acts of 1870, p. 152.)

2. The second ground of the motion for a new trial is, "that the act creating the county of San Jacinto, on its face, and in the mode in which it passed, violates the Constitution." To sustain this position it is only neces- sary to examine the journals of the Legislature, of which the court will take judicial notice, and the act creating the county of San Jacinto. (Laws of 1870, p. 79.)

The bill was not read on three several days in each house, and in a case where no emergency existed to au- thorize either house to dispense with the constitutional rule. If the Legislature construed the 24th Section, Ar- ticle 3, Constitution, as only directory, such a construc- tion is totally unauthorized by the language of the sec- tion; it is mandatory, and the Legislature has no power to set it aside at pleasure.

Judge Story says: "When no ambiguity exists, or doubt appears in the law, the court should confine its at- tention to the law; contemporary construction can never abrogate the text, can never fritter away its sense, can never narrow down its true limits; it can never enlarge its natural boundaries." (Story on the Constitution, Sec. 407; Evans v. Myers, 25 Penn. St., 116; Saddler v. Langhow, 34 Ala., 311; Barnes v. Parish of Falmouth, 6 Mass., 417; Cooley's Const. Limitations, 78 et seq., 81, 88; McCullough v. The State, 11 Ind., 432; Willet v. Wigdon, 7 Ind., 452; Oakly v. Aspinwall, 3 New York, 568; People v. Purdy, 2 Hill, 36; 4 Hill, 144 and 384; Green Castle Township v. Black, 5 Ind., 566; People v. Campbell, 3 Gilm., 466; People v. Lawrence, 35 Bar-

bour, 177, 186; Protho v. Orr, 12 Ga., 36; Indiana R. R. Co. v. Potts, 7 Ind., 683; People v. Draper 15 N. Y., 543. And further, as to the admissibility of the journal in evidence, see Gardner v. The Collector, 6 Wallace, 499, and the cases cited in the opinion of the court; also, The People *ex rel.* Barnes v. Starne, 35 Ill., 138, and 2 Minn., 330.)

3. The third cause assigned for a new trial involves the constitutionality of the act of the thirteenth of April, 1871, Pamphlet Laws, p. 34, entitled, "An act providing for the change of venue in certain cases pending in the District Court of Polk county, from the county of Polk to the county of San Jacinto."

It is respectfully suggested that this act assumes a power that is judicial in its character, and which the Legislature is prohibited from exercising, by Section 1, Article 2, of the Constitution.

4. The sixth ground embraced in the motion for a new trial should have been sustained.

I call the attention of the court to the affidavit of Green B. Byrd, a gentleman having no interest to be affected by the result of the suit, and to the testimony of Dr. R. D. Haden, sustaining, in part, the testimony of Green B. Byrd. The testimony of Mr. Byrd, in the community in which he lives, needs no aid to secure absolute belief. He states facts occurring under his own observation, during this trial, as well as the conversation that passed between himself and Keys, an individual living on the plantation of W. B. Darby, W. B. Denson's half-brother. He (Keys) told witness that he was hauling cotton to Patrick's gin, and on Tuesday evening last he received a letter from W. B. Darby, asking him to come to Cold Springs; if he ever was his friend now was the time to show it. When he came down, Darby wanted him to go on the jury. He managed to be placed on the jury. He did not expect to be objected to, because he

had served with Beazley in the army, and that when he was objected to he got a man in his place who would be carried round the circuit and rot in the jury box before he would give up the case.

The affidavit of Martin Branch states the fact that, during the trial, Billingsly and R. E. Lee, two of the jury, were drinking liquor at Ross' store with Cole, the brother-in-law (and I have no doubt the silent partner in the whole transaction) of Denson, when Cole told Billingsly that "he must stand up to him." I am aware that both Cole and Billingsly deny the statement of Martin Branch; but upon a question of credibility I think the case strongly in favor of Martin Branch, for Cole, in his testimony on the trial, admitted that he had taken the benefit of the bankrupt law, filed his schedule and swore to it, yet had omitted to include a debt of $4000 due him from his brother-in-law, W. B. Denson; and Billingsly, whilst denying that he had ever made the remarks testified to by Branch, and that any person had ever talked to him on the subject of the trial, evincing an indignation on the subject and seeming to feel it his duty to have presented to the judge any person who would dare to do such a thing, yet he seems to have forgotten that one Dobson, in Darby's store, told him he must find for Denson, and treated him to cheese and crackers, and that J. E. Haden, who was in the store, interfered and stopped the conversation about the case. That the jurors who tried the case should file affidavits exculpating themselves from blame is very natural and is to be looked for, whether the jurors be honest or dishonest.       *·      *      *      *

*Abercrombie & Banton, Walton,* and *Hancock & West,* for appellee.—1. It is evident that Denson did not come within any of the exceptions to the general rule permitting parties to the suit to testify in their own behalf. We deem it unnecessary to discuss this point.

2.. That there was no error in charging the jury that every man is presumed to be of sound mind, and that those who allege his unsoundness must prove it, is a proposition quite too clear for argument. This is the presumption when his life is at stake where there is a counter-presumption of innocence, and we apprehend a different rule would not be adopted where any property is involved. (See 1 Redf. on Wills, pp. 31, 45–47; Jackson v. Van Dusen, 5 Johnson, 144–158.)

No counter-charge was asked, no exception taken, and the charge was not complained of in the motion for a new trial.

3. On the former appeal it was claimed for the contestant that Col. Washington labored under a delusion, and the judge below having charged that the existence of delusion was evidence of unsound mind, this court held that the charge was erroneous, and further, that the record contained no evidence of such delusion as to affect the testamentary condition of Col. Washington's mind. This, we respectfully submit, settles the question and relieves us of its discussion, unless the record now before the court discloses more testimony on that point than was before the court on the former appeal. From the statement of facts, as shown in the additional transcript, it will be seen that the statement of facts in the former trial was, by agreement of counsel, read as evidence on the trial of this cause.

4. We call the particular attention of the court to the fact that no affidavit or charge connects the plaintiff, either directly or indirectly, with any effort to influence the jury, and it is settled that such efforts by strangers will not vitiate the verdict, especially where it is in accordance with the law and the evidence. (The People v. Carnal, 1 Parker, N. Y. Crim. R., 260.) And although some earlier decisions, especially in Massachusetts, go to the extent of holding that any intermeddling with the

jury by any one, whether the jury was thereby influenced or not, would vitiate the verdict, the tendency of more recent decisions is to confine the motion for a new trial to the question of abuse, and to invariably deny the application where no injury has resulted. (Collins v. The State, 20 Ark., 50; see also Barbour v. Archer, 3 Bibb, 8.) That no injury resulted to the defendant in this case is manifest from affidavits of the jurors, which show that the verdict would have been the same in the absence of the influences complained of. It is also manifest from the more important fact that the verdict is abundantly supported by the law and the evidence.

Where motions for new trials are made on the ground of misconduct, etc., and there are conflicting affidavits, the judge of the lower court, who has all the parties and circumstances before him, is held to be best qualified to pass upon the merits of the application—in fact, is said to be the exclusive judge of its merits. (Heath's Case, 1 Rob., Virginia R., 742; McCarty v. McCarty, 4 Rich. S. C. R., 598; Cox v. The State, 32 Texas, 610.)

In conclusion we respectfully submit that your honors, sitting as a jury on this case, could not under the law as adjudged by this court, and on the facts already passed upon by the court, come to any other conclusion than that to which the jury came.

McADOO, J.—This is a contested will case. It comes from the District Court of San Jacinto county by appeal.

The first point raised by the appellant goes to the jurisdiction of the court below, based upon the allegation that the so-called county of San Jacinto is of less dimensions than nine hundred square miles, and therefore the act of the Legislature organizing said county is in violation of Article 12, Section 24, of the Constitution of 1869.

We find no proof in the record of the want of area, and

we think we cannot, in a collateral proceeding, pass upon this question.

But the charge of the court is objected to, in that the jury are instructed that "every man is presumed by the law to possess a sound mind till the contrary be shown by evidence."

This is error. In matters of probate, under our law, no such presumption is indulged. On the contrary, in order to establish any will, it must affirmatively appear that the deceased was of sound mind when he signed the will. (Article 5537, Paschal's Digest.)

This affirmative testimony would be necessary if there were no contest; and the law does not justify the imposition of a new rule when, by a contest, the soundness of the testator's mind is put in issue.

As we can well conceive the jury were liable to be misled by the erroneous instructions just noticed, we must, of necessity, reverse the judgment and remand the cause.

REVERSED AND REMANDED.

Opinion delivered October 28, 1873.

### ON APPLICATION FOR REHEARING.

*Hancock & West* and *W. M. Walton*, for appellee.— The appellee respectfully applies for a rehearing in this case, and for grounds of motion submits the following propositions:

I. The court decides, that in this case the instruction that "every man is presumed by the law to possess a sound mind until the contrary be shown by evidence," was erroneous.

II. The other issues were decided in favor of appellee, and the decision stands on the error of the charge above quoted.

In answering the ruling of the court we will appeal alone to authority.

I. Was the charge erroneous in this case?

1. It cannot be questioned that the charge, as a general rule, is a sound proposition of law, and we think it peculiarly applicable in this case.

2. The evidence consists of a great mass of facts, contradictory in themselves, and have been passed on by two juries—one giving a verdict for the appellant and the other for appellee. In such state of case the presumption of law in favor of sanity comes in and must have its effect. (See 1 Redf. on Wills, pp. 39, 40, subdiv. 13; see also Brooks v. Barrett, 7 Pickering, p. 94.)

II. Admit that the charge was erroneous of itself, yet the discussion in the elaborate instructions of the court corrected the error, and invited the minds of jurors to the very issues in the case as supported by facts on the one side or the other. In such case the court will not reverse. (Hubby v. Stokes, 22 Texas, 220; Vaughan v. The State, 21 Texas, 752; Case v. Jennings, 17 Texas, 674.)

III. But suppose that there was error in the charge of the court, the appellant has not placed himself in position to take advantage of it.

It will be remembered that objection is here taken to the general charge of the court. In order that a party may take such objection to it, or any part of it, it is absolutely necessary that an objection should have been taken at the time the charge was given. (Hall *et al.* v. Stancell, 3 Texas, 400; Houston v. Jones, 4 Texas, 170; Jones v. Thurmond, 5 Texas, 323; Thatcher v. Mills, 14 Texas, 16; Converse v. McKee, 14 Texas, 30; Earle v. Thomas, 14 Texas, 593; Hollingsworth v. Holshousen, 17 Texas, 47; Bast v. Alford, 20 Texas, 229; Robinson v. The State, 24 Texas, 154; Powell v. Haley, 28 Texas, 56; Wright v. Donnell, 34 Texas, 305; Robinson v. Varnell, 16 Texas, 383.)

In this latter case, we invite the attention of the court to the quotation from 11 Wheaton, 413, Armstrong v. Toler, opinion by Chief Justice Marshall, wherein the law as established by this court is fully sustained.

The exception or objection to the charge of the court, or to any part of it, could be easily and speedily taken, either by a counter-charge asked, or by bill of exception—or perhaps verbal, with an entry on the docket by the judge. (Robinson v. Varnell, 16 Texas, 383; Eborn v. Chote, 22 Texas, 34.)

If in any case the rule should be rigidly enforced, this is the case—

1. Because of the two trials.

2. The great mass of facts.

3. The evident sanity of the testator, tested by all rules.

4. The great preponderance of evidence establishing sanity.

5. The evident fact that the charge did not mislead the jury.

6. The evident fact that the jury looked alone to the facts, and did not weigh presumptions.

7. The fact that appellant did not except or object to the charge, nor ask counter-charge, but, on the contrary, acquiesced in the charge as given, and in open court expressed satisfaction with it.

This latter statement can be substantiated by the affidavit of the judge who tried the case, if the court will look at it.

We submit that a rehearing should be granted and the judgment of the court below affirmed.

*Terrell & Walker*, for appellant.—I. There was no error in the opinion of this court, and the motion for a rehearing should be overruled.

The charge of the court below was in palpable viola-

tion of the probate act of August 15, 1870, which provides :

"SEC. 76. Where a subscribing witness testifies, the will is proved as follows, viz.:

\*      \*      \*      \*      \*      \*      \*

"2. It must appear that the deceased was twenty-one years of age or upward and of sound mind when he signed the will.

"3. It must appear that both the witnesses to the will were over fourteen years of age when they witnessed it."

Whatever may be thought of the wisdom or policy of presuming a testator incapable of making his will, and requiring evidence to remove that presumption, such is manifestly the law in Texas. In a case of conflicting testimony like this, it is impossible to estimate the effect on the jury of a charge which required them to presume the testator sane and find accordingly, unless it was "satisfactorily shown by the evidence that said will was written or signed by the testator when of unsound mind." Especially is this true when it is observed that emphasis and prominence is given to the erroneous charge by the repetition of the instruction that the jury must presume the testator sane. Under such circumstances, when doubts were created by conflicting testimony, the jury was not only authorized but in effect directed by the charge to solve them, reposing on the presumption of sanity.

The testamentary disposition of realty was never permitted at common law. The right was first conferred by the 32d and 34th of Henry VIII., though with limitations, and it was never until the statute of 1 Victoria, Ch. 28, that the right existed to dispose by will of all the real estate one might be entitled to at law or equity at the time of his death. In this reluctance to concede the right of testamentary disposition of realty, we find a reason for the jealousy with which the law exacted proof of the

mental capacity of the testator. As early as 1740 Lord Hardwicke said: "It has been determined over and over again in this court, that you *must show* the person to be of sound and disposing mind when a will is to be established as to real estate, and especially if there are infants in the case; proving it to be well executed according to the statutes of frauds and perjuries is not sufficient. (2 Atkyn, 55.)

Mr. Baron ‡Parke, more than a hundred years afterwards, said: "The rules of law according to which cases of this nature are to be decided do not admit of any dispute. * * * These rules are two: the first, that the *onus probandi* lies in every case upon the party propounding the will, and he must satisfy the conscience of the court that the instrument so propounded is the last will of a free and capable testator." (Barry v. Butlin, 1 Curteis, 419.) In that case it was said: "The strict meaning of the term *onus probandi* is this: that if no evidence is given by the party on whom the burden is cast, the issue must be found against him." And again: "Sanity is the great fact which the witness to the will has to speak to when he comes to prove the attestation," etc. The adversary relies on Mr. Redfield in support of his position that sanity must be presumed, yet his note on the authority just cited contains only the expression of his own views, and is in direct conflict with the case to which it refers. (1 Redf. on Wills, p. 40, Note 22.) If the issue is to be found against the party propounding the will in the absence of proof of insanity, and "if that (sanity) be the great fact which the witness to a will has to speak when he comes to prove its attestation," how can Mr. Redfield conclude that the party propounding is "no more bound to examine the witnesses on this point in the first instance than he is to any other statutory requirement, such as age, discoverture, citizenship," etc.? (1 Redf., p. 40, Note 22.) The doctrine on this subject

announced in Barry v. Butlin is also affirmed in S. C. 2 Moore, P. C. C. 480; Baker v. Batt, id.;317; Browning v. Budd, id. 430; Paske v. Ollatt, 2 Phillim., 323.)

It is true that there is some conflict of authority in England on this subject, and when we consider the provisions of their statute of wills we can understand a reason for conflicting opinions there which cannot apply to the statutes of some of the American States. The statute of Henry VIII., Section 4, enacts, "that all and singular person or persons having estate or interest in fee simple and in lands, etc., shall have full and free liberty to give, dispose, will, or devise to any person or persons, etc., by his last will and testament in writing, as much as in him of right is or shall be, his lands, etc., at his own free will and pleasure;" and afterwards, by Section 14, provides, "that wills or testaments made, etc., by any woman covert, etc., or by any person *de non sane* memory, shall not be taken to be good or effectual in the law." So the power to will is conferred in the first place on all persons, and afterwards an exception is made of those of *non sane* memory.

We venture the opinion that the conflict of decisions in the United States on this subject has resulted from adopting in some cases the opinion in White v. Wilson, 13 Ves., 87, without examining the marked difference between the provisions of the statute of wills in England and those contained in statutes of the several States.

The American authorities on this point are strangely conflicting, but we submit that the weight of authority, as well as of reason, is with those who devolve the burden of proving sanity on the party seeking to establish the will. This doctrine is announced in Cumstock v. Hadlyme, 8 Conn., 261. In that case Williams, J., said: "Those who claim under the will must take upon themselves the burden of proof, and they must not only prove that the will was formally executed, but that the testator was of sound and disposing mind."

The same doctrine is held in Tuff v. Hosmer, 14 Mich., 309, and again in Aikin v. Weckerly, 19 Mich., 482. In the case last cited, the Supreme Court of Michigan say: "The burden of proving the testator's mental capacity is on the proponent of the will and remains on him throughout, and is not sustained sufficiently by the presumption in favor of mental capacity."

The same doctrine is held in Massachusetts, in Crowningshield v. Crowningshield, 2 Grey, 524; and in Gerrish v. Nason, 22 Maine, 441. In that case the court say: "The presumption that the person making the will was at the time sane is not the same as in the case of other instruments, but the sanity must be proved."

The authority of Crowningshield v. Crowningshield, though apparently shaken by the opinion of a divided court in Baxter v. Abbott, 7 Grey (decided in 1856), is quoted with approval and endorsed by the Court of Appeals of New York, in the great case of Delafield v. Parish, 25 New York, 32–33. The case was decided in 1862, and contains an able review of all the cases bearing on the point.

II. But, again, there can be no doubt that the will of 1868, when we consider its provisions with reference to the testator's property and kindred, was what would have been regarded by the civil law as an inofficious testament. The doctrine of the civil law in construing such instruments is founded in such manifest justice that it has been recognized in New York so far as to require those claiming under an inofficious testament the necessity of giving some reasonable explanation of the unnatural character of the will, or at least of showing that its character is not the offspring of mental defect, obliquity, or perversion. (1 Red. on Wills, 515.)

Thus, when a person infirm and confined to bed with weakened intellect is induced, by fraud, imposition, or undue influence, to make a testamentary disposition of

his property different from what he would in the full pos-
session of his faculties, the same will be set aside, upon
the principle that a court of chancery sets aside a con-
veyance of property made under like circumstances.
(Fisher v. Clark, 1 Paige Ch. R., 176.)

III.    We submit that the fourth assignment of error
was well taken.

The trial by jury becomes a mockery if an unscrupu-
lous litigant is permitted to forestall the verdict by resort-
ing to the means disclosed by the record.   An appellate
court is not required to weigh and measure the influence
on the verdict produced by improper tamperings with
the jury; it should be enough that one who has attempted
unscrupulous means to influence their deliberations has
secured a verdict.  How far in such a case the course of
justice has been perverted by an effort to poison its
springs it is always impossible to prove ; it is, therefore,
an established and salutary rule of law that the least in-
termeddling with a jury is sufficient cause for setting aside
the verdict.   (Shea v. Lawrence, 1 Allen, 168-9.)  But
especially is this so when the intermeddling is by the
prevailing party.   (Hilton v. Southwick, 5 Shep., 303 ;
Tucker v. South., etc., 5 R. I., 558.)

Again, it is not necessary that the tampering with the
jury should be done by a party, or even by an agent, if
done in his behalf ; nor is it necessary to show that the
jury was thereby influenced or controlled in forming their
verdict.   It is enough to vitiate the verdict that the im-
proper effort to effect it was made.   (Cohen v. Robert, 2
Strobb, 410; Hare v. The State, 4 Howard, 187; Boles v.
The State, 13 Sm. & M., 398 ; McCann v. The State, 9
Sm. & M., 465; Timlin v. Den, 4 Har., 76; Ritchie v. Hol-
brook, 7 S. & R., 458 ; The State v. Hascall, 6 N. H., 352.)

Any communication made by a party in interest while
the jury is deliberating avoids the verdict. (People v.
Carnal, 1 Parker, 256.)

So in Georgia it has been held that the entertainment of a juror, even by the counsel of the successful party, while the case was pending, is sufficient ground for a new trial. (Walker v. Hunter, 17 Ga., 364.)

The objection urged by opposing counsel, that exceptions were not taken by the counsel who managed the cause in the court below, should have but little weight in a case like this. The rule which requires exceptions to be saved is one adopted by the court in furtherance of the ends of justice, and cannot be invoked to assist a party whose fraudulent designs are apparent on the face of the record. Rule VII., adopted by this court at its January term, 1840, prohibits in this court "any objection to be taken to the admissibility, as evidence, of any deposition, deed, grant, or other exhibit, etc., unless objection was taken thereto in the court below," and was never meant to be applied to objections apparent on the face of the record. Such was the construction received by the rule in Cloud & Smith v. Adriance, 1 Texas, 106. The present rule, adopted on the same subject by this court at its May term, 1872, is identical in terms (see Rule V., 32 Texas, 808), and should not be construed to apply to instructions of the court clearly erroneous.

REEVES, ASSOCIATE JUSTICE.—This is a proceeding to establish the will of Col. Hamilton Washington. Two juries have passed upon the evidence, one finding in favor of the will of 1860, and the other for the will of 1868. On appeal from the judgment establishing the will of 1868 the judgment was reversed. The District Court charged the jury that "every man is presumed by the law to possess a sound mind till the contrary be shown by evidence." The court here decided that the charge was erroneous, and reversed the judgment, and the case comes before this court on appellee's motion for a rehearing.

On the supposition that there was error in the charge of the court, appellee contends that appellant has not placed himself in position to take advantage of it, because objection was not made to the charge at the time it was given. Appellant assigns for error the charge as stated in the decision reversing the judgment, though it was not made one of the grounds in the motion for a new trial.

Appellee refers to numerous decisions of this court as sustaining his position that, appellants having failed to object to the charge at the time it was given, it cannot now be made a ground to reverse the cause.

This has been the general practice of this court where the general charge is unexceptionable. But when "the verdict of the jury has been made to turn upon an erroneous charge, and the judgment upon the merits is thus founded on error," the judgment will be revised, though the charge was not complained of at the time, as in Hollingsworth v. Holshousen, 17 Texas, 47; Wetmore v. Woodhouse, 10 Texas, 33; or where the charge excludes material conclusions to be deduced from the evidence, it is held to be error, without counter-instructions having been presented. (Chamblee v. Tarbox, 27 Texas, 146.)

In Bailey v. Mills, 27 Texas, 434, the court said: "It is the practice of this court to reverse a judgment whenever there is an erroneous instruction upon a material point which may have influenced the jury in finding the verdict, although the evidence may appear to us to be sufficient to sustain the verdict, and the reason of the rule is that it is impossible to know what effect the instruction had upon the minds of the jury; how much the verdict is due to the instruction, and how much to the evidence, and in a case of conflicting evidence, it is impossible to know that it would lead the minds of the jury to the same conclusion as the minds of this court."

Where the general charge fails to cover the whole law of the case, or is correct in its application to the particu-

28

lar case, or where the jury could not have been influenced or mistaken by the charge, objection must be made at the time it is given, otherwise this court will not revise the judgment. (Davis v. Loftin, 6 Texas, 489, 500 ; Hubby v. Stokes, 22 Texas, 220 ; Vaughan v. The State, 21 Texas, 752 ; Case v. Jennings, 17 Texas, 661 ; Farquhar v. Dallas, 20 Texas, 200; Thompson v. Payne, 21 Texas, 625; Powell v. Haley, 28 Texas, 52.)

In Robinson v. Varnell, 16 Texas, 383, as also the case it quotes from, 11 Wheaton, 276, Armstrong v. Toler, the court is discussing a case in which the charge does not embrace all the law applicable to the case, but is not wrong in point of law so far as it goes, and in such a case the court must be asked to charge upon the point omitted, if it is desired to have it revised by this court.

These authorities will suffice to show the general practice of the court, and the character of cases to which the rule contended for must be applied, and the cases in which the rule does not apply.

Was the instruction erroneous?

The statute concerning wills, Article 5361, provides that "every person aged twenty-one years or upwards, being of sound mind, shall have power at his or her will and pleasure, by last will and testament, in writing, to devise," etc.

The statute requires among other things to be proved that "it must appear that the deceased was twenty-one years of age or upwards and of sound mind when he signed the will." (Pas. Dig., Art. 5537.)

Where the will is not contested, there can be no question in regard to the burden of proof.

In this case the petition of the executors to probate the will contains no averment that the testator was of sound mind ; and if the rule contended for be correct, the will might have been established without either allegation or proof of mental capacity, if there had been no opposition.

Where the estate is disposed of by will, changing the
course of descent and distribution as regulated by law,
proof of mental capacity of the testator has always been
exacted as essential to the establishment of the will.

There is some confusion or conflict of authority as to
the burden of proof where the incapacity of the testator
is alleged. This has been the result in some cases per-
haps of failing to notice the practice of the English
courts on the probate of wills. I quote from Redfield on
Wills as follows:

"The ecclesiastical courts, as is well known, do not
have any jurisdiction of the probate of wills affecting real
estate. Hence they have to be proved in the English
courts of common law or equity, whenever questions of
title under wills arise in those courts. And the courts of
equity, whenever any question arises in regard to the va-
lidity of a will, almost uniformly send the question to
be tried in the common law courts, either under the
feigned issue *devisavit vel non*, or in an action of eject-
ment to be brought by the party claiming under the will.
And in sending such an issue to be tried in the common
law courts, it is not uncommon for the courts of equity to
give some directions in regard to the order and extent of
proof to be adduced by the respective parties to the issue
involved." (Redfield on Wills, Vol. 1, pages 33–34.)

Under that practice no invariable rule can be deduced.

The charge of the court, as a general rule, as applied
to deeds and ordinary contracts, cannot be doubted as a
correct proposition of law. But the same presumption
does not attach to wills, as shown by the authorities
quoted by appellant's counsel, for the reason, as there
stated, that "wills are supposed to be made *in extremis*,
or made when the mind is to some extent enfeebled by
sickness or old age," and on other grounds. (Delafield
v. Parish, 25 N. Y., and authorities there referred to.)

It is believed that the correct rule on this subject is laid

down in the case of Renn et als. v. Samos et als., 33 Texas, 760, quoting 1 Redfield on Wills, 31, and 1 Greenleaf's Evidence, Section 74: "The formal burden of proof in trials directly upon the probate of the will, whether in the court of probate or upon appeal, is upon the executor or those who set up the will. He or they are, therefore, allowed to go forward in the proof and argument; but when the will has been established and probated, and an original suit has been instituted in the District Court to set it aside, on account of insanity or want of testamentary capacity, or for fraud, then the relative position of the parties is changed, and the party alleging the insanity or fraud, or a want of testamentary capacity, is put upon the proof of his allegations, and therefore becomes the plaintiff."

We will notice some of the grounds of the motion for a new trial and the assignment of errors.

The questions relating to the change of venue, and that the act of the Legislature was not read on three several days, etc., were made for the first time on the motion for a new trial after trial on the merits, and cannot be considered in the form presented. Whether the new county contained nine hundred square miles was a question that could not be raised in the suit.

No error is seen in allowing the plaintiff, Denson, to testify in the cause. He does not come within the exception to the general rule allowing parties to the suit to testify as witnesses.

Another objection is that improper influence was exercised in forming the jury that tried the case.

The affidavits in the record show that the juror Billingsly was guilty of marked impropriety of conduct at least, and such as merits reprehension, if the witnesses are to be believed. He suffers himself to be approached during the trial of the case and listens to a proposition that would question his integrity as a juror without resent-

ment or apparent displeasure, when it was due to himself and his fellow-jurors to make it known to the court before his affidavit was made, after the trial. His silence at the time, and consenting to be treated to cheese and crackers at one place and drinking at another, instead of reporting promptly the offenders to the court for punishment, afford grounds for comment unfavorable to the juror. Such conduct is inconsistent with the pure administration of the law, and is calculated to bring reproach upon jury trials.

The affidavit of the juror Cartwright, that he "did not know whether the letter he had received influenced him or not," suggests a doubt whether the case was tried by an impartial jury.

There are other circumstances in proof showing a purpose to pervert the due course of law by procuring a verdict by indirect and improper means, if the witnesses are to be credited.

The argument of counsel for the motion that the verdict ought not to be disturbed, as the jury had all the facts before them, would be entitled to great weight if the court had omitted the charge complained of, or had explained it in a way that it would not have influenced the jury. But it will be seen that the charge makes the onus rest on the contestant, Beazley, without explanation, and the impression on the minds of the jury was, probably, that if they had a doubt of the testator's mental capacity, it was incumbent on Beazeley to remove the doubt.

The effect of the charge when the testimony was conflicting is readily perceived.

We conlcude, after due consideration of the motion for rehearing, and after examination of the record as presented, that the judgment ought to be reversed and the cause remanded on the grounds indicated in the opinion.

MOTION OVERRULED.

GRAY, ASSOCIATE JUSTICE, *dissenting.*—The opinion delivered in this cause is based in part upon error assigned to a portion of the charge of the court below. But there was no exception to that charge, nor counter-charge prayed, nor even in the motion for new trial was error in the charge made one of the grounds. The first objection to it is made in the assignment of errors.

While I fully concur in the opinion on other grounds, and also that the charge was erroneous in changing the burden of proof of sanity of the testator from the party propounding the will for probate to those contesting it, yet I cannot concur that it was such an error apparent on the record as should be considered by this court, although assigned as such, when there was no exception, as before stated, in the lower court. It is manifestly not such an error as affects the foundation of the action, nor such as clearly and necessarily must have influenced the verdict.

Had it been, I am quite sure that the learned counsel representing appellant would have noticed the error and its necessary effect at the trial ; and most surely it would have occurred to them after verdict against their client and before motion for new trial. Their not having noticed it is, in this case particularly, persuasive to my mind that it was not then deemed by them as a material error. Such should be the presumption in all cases, and I cannot concur in a practice which tends to relax vigilance in the management of causes, and does not give to the court below an opportunity to correct any error into which it may have fallen, unless such error clearly affects the merits and foundation of the action. Beyond this exception I do not think this court should consider assignments of error not in some way called to the attention of the court below, and thereby made apparent on the record. In all other respects I concur in the opinion of the court.