MEEK v. SKEEN.

(Circuit Court of Appeals, Fifth Circuit. February 20, 1894.)

No. 131.

1. EXECUTION—BONA FIDE PURCHASERS—UNRECORDED DEED.

On a bill to quiet title, complainants were purchasers at execution sale made under a judgment owned by them, while respondent claimed under a prior deed from the judgment debtor, which was not recorded. The only evidence as to notice of this deed was that the debtor told complainants, before the execution sale, that he had sold all his property, and endeavored to settle the judgment for a small amount. But he did not tell them to whom he had sold, nor did complainants ever hear respondent's name mentioned in connection with the land in controversy. Held, that they were purchasers without notice of respondent's deed.

2. Same—Sheriff's Deed—Description.
    Where, upon the record, a judgment debtor had the unqualified fee simple in the land, the levy upon and sale of "all the estate, right, title, and interest" which he had in the land, and the execution of a deed in the same terms, vest the same unqualified fee in the purchaser, without regard to a prior unrecorded deed made by the debtor, of which he had no notice.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This was a bill to quiet title, filed by Virgil Skeen against James G. Meek. There was a decree for complainant, and respondent appeals.

D. T. Bomar and J. E. Bomar, for appellant.

Seth W. Stewart, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge. The appellant, James G. Meek, brought against appellee an action of trespass to try title to 320 acres of land in the possession of appellee, in Wichita county, Tex. The appellee then exhibited his bill, setting up his title, praying that the appellant be enjoined from proceeding with said action at law until the appellee's rights and equities could be considered and determined; that appellant be required to show cause why a deed he held to appellee's land should not be canceled, and the cloud removed from appellee's title, caused by the record of said deed. The suit proceeded to hearing. On 10th March, 1893, the circuit court rendered its decree in these words:

"This cause this day coming on to be heard, came the complainant and respondents, by their respective attorneys, and announced 'Ready for trial;' and the court, having heard the evidence, and argument of counsel, and being sufficiently advised, finds that the land in controversy, to wit: The south half of section No. 39, H. & G. N. R. R. Co., situated in Wichita county, Tex., described by metes and bounds as follows: Beginning at the S. W. corner of section No. 39, H. & G. N. R. R. Co. surveys; thence north 950 varas to a stake in the west boundary line of said survey; thence east 1,900 varas to a stake in the east boundary line of said survey; thence south 950 varas to the southeast corner of said section No. 39; thence west 1,900 varas, with the south line thereof, to the place of beginning,—was by the state of Texas, on the 14th day of August, 1873, patented to W. W. Purinton; that on the 4th day of October, 1877, a valid judgment was rendered in the district court of Grayson county, Tex., against said W. W. Purinton, in favor of S. D. Cook, for the sum of $1,460, besides interest and cost; that a valid execution issued on said judgment, and was levied upon the above-described land, as the property of said W. W. Purinton, by the sheriff of Clay county, Tex., to which said county Wichita county was then attached for judicial purposes (said Wichita county, in which the land was situated, then being an unorganized county); that said land, in pursuance of said execution and levy, was· by said sheriff sold, as provided by law, at the courthouse door of said Clay county, Tex., on the first Tuesday in February, 1878, the same being the 5th day of said month, and at which said sale Gunter & Munson, a firm composed of Jot Gunter and W. B. Munson, became the purchasers of said land, and received a deed from the sheriff therefor; that the judgment, execution, levy, sale thereunder, and sheriff's deed, were all valid, and in due and legal form. The court further finds that complainant, Virgil Skeen, holds, claims,

and is in the actual possession of, said land, under a regular consecutive chain of transfers from said Gunter & Munson, and he and those under whom he holds have made permanent and valuable improvements on said land. The court further finds that on the 27th day of October, 1873, said W. W. Purinton, by deed in writing, conveyed said land to Jas. G. Meek, one of the respondents herein, but that said deed was not recorded until the 10th day of September, 1878, after said land had been sold under execution on the 5th day of February, 1878, as hereinbefore stated. The court further finds that the said Gunter & Munson, purchasers of said land at sheriff's sale as aforesaid, were the owners of said judgment against said Purinton, upon which said execution issued, at the date of said levy and sale, and that neither they, nor either of them, had notice or knowledge of said unrecorded deed from said Purinton to said Meek at the date of the levy of said writ, or at the date of the sale thereunder. It is therefore ordered, adjudged, and decreed by the court that complainant's bill be, and the same is hereby, sustained, and that complainant, Virgil Skeen, do have and recover judgment against said defendant, James G. Meek, annulling, canceling, and setting at naught the said deed executed by said W. W. Purinton to said Meek on the 27th day of October, 1877, for the land in controversy, as aforesaid, and that the cloud thereby cast upon complainant's title to said land be, and the same is hereby, removed, and that said complainant be, and he is hereby, forever quieted in his title to, and possession and enjoyment of, said land and premises herein described and set out. It is further ordered, adjudged, and decreed by the court that the law action heretofore commenced and now pending on the law docket of this court, wherein said Jas. G. Meek is plaintiff, and the said complainant, Virgil Skeen, is defendant, and wherein said plaintiff seeks to recover from the defendant the possession of said land and premises, be, and the same is hereby, perpetually enjoined, and said Jas. G. Meek and D. T. Bomar and Ed. Bomar, his attorneys of record in said law action, be, and they and each of them are hereby, forever prohibited, restrained, and enjoined from the further prosecution of said suit. It is further ordered that said complainant do have and recover of and from said defendants all costs by them in this behalf incurred, for which execution may issue as at law. To which said judgment the respondent Jas. G. Meek excepts."

To reverse which decree this appeal is taken.

The appellant assigns error as follows:

"The court erred in rendering judgment for the complainant herein against this respondent, for the following reasons: (1) Because the respondent was shown by the record, and was admitted, to have the legal title to the land in controversy; and the proof failed to show that Gunter & Munson, or any one claiming under them, were innocent purchasers for value, in good faith. (2) Because the record failed to show that Gunter & Munson were innocent purchasers for value, in good faith, of the land in controversy, and that they bought at their own sale, and credited the amount of their bid on the judgment, and because it showed that neither Gunter nor Munson attended said sale, or caused said levy to be made, and it was not shown that the agent or servant of Gunter & Munson who did cause said levy to be made, and did attend said sale, had no notice of the fact that W. W. Purinton had sold and conveyed the land in controversy, and because the testimony of W. W. Purinton showed that Gunter & Munson had notice that he had sold and conveyed the land prior to the levy of said execution. (3) Because the amount bid by the said Gunter & Munson at said sale for said land was grossly inadequate, as compared with the value of the land, to constitute them innocent purchasers for value, in good faith, as against the unrecorded deed made by said Purinton to the respondent. (4) Because it is shown by the evidence that the execution under which Gunter & Munson bought was levied upon the right, title, and interest of W. W. Purinton in and to the land in controversy, and not on the land itself, and that said Gunter & Munson could not be innocent purchasers of the land when the sheriff only levied on and sold the right, title, and interest of said Purinton."

Gunter & Munson took as creditors of W. W. Purinton, and, if their execution was levied on the land granted to him by the state before his deed to Meek was recorded, they acquired by their subsequent purchase the fee in the land granted to him by the state, unless it be shown that they, or one of them, had actual notice of the sale to Meek, or had notice of facts that would have caused a prudent man to make such inquiries as would have resulted in obtaining the knowledge that Purinton had sold the land to Meek; and it would seem that, in the case of creditors, the burden of proving this notice is on the party claiming under this unrecorded deed. Grace v. Wade, 45 Tex. 522; Grimes v. Hobson, 46 Tex. 416; Parker v. Coop, 60 Tex. 111. Grant that appellee, by the allegations of his bill, assumed the burden of showing that Gunter & Munson did not have such notice. The circuit court, on the evidence, has found that, at the date of the levy and sale, Gunter & Munson, nor either of them, had notice or knowledge of the unrecorded deed. We consider the proof sustains this finding. The bill does not waive an answer under oath. The answer of the respondents D. T. Bomar and J. E. Bomar is not under oath. The answer of the appellant, James G. Meek, is sworn to by his solicitor. It does charge "that the said Gunter & Munson had actual notice of the claim of this defendant upon said land, or such notice as to put them on inquiry that would have led to such discovery." This is clearly only the statement of a conclusion from some facts not stated. The testimony of Purinton gives the facts of which the solicitor evidently had information when he prepared the answer, and verified it by his own oath.

The judgment against Purinton was rendered 4th October, 1877. The witness Purinton says:

"I saw Jot Gunter, and had a conversation with him, shortly after the judgment was obtained, within thirty or sixty days, and prior to the 14th January, 1878 [the date of the levy of the execution], and told him that I had no property at all, and that I had sold and conveyed all the property I had owned."

Being asked what led to this conversation, he says:

"I met him, and spoke to him about the unjustness of the judgment, and told him that I would like to settle it, as I had no property, but would give a small amount to have the thing settled."

He says that Gunter did not ask him about any lands in Wichita county; that he told Gunter he had sold and conveyed all the land he had owned; that Gunter knew there were other judgments against him; that witness did not mention any particular tract, or mention James G. Meek's name. The witness Jot Gunter testifies that he never had any actual notice of the unrecorded deed, that he never heard Mr. Meek's name mentioned until the interrogatories were propounded in this case. The appellant agrees that Mr. Munson testifies to the same facts as testified to by Jot Gunter. Here is no proof that either Gunter or Munson had actual notice of Meek's deed. Here is full, uncontradicted proof that neither of them had ever heard Meek's name mentioned till after issue joined in this suit. The proof shows Purinton, as a debtor claiming to be insol-

vent, trying to induce his judgment creditor to settle with him at a small figure. What inquiry would his statement to Gunter cause a prudent man to make, under such circumstances? What inquiry could he make that would lead to any more definite information? We must hold with the circuit court that neither Gunter & Munson, nor either of them, had notice of Meek's unrecorded deed at the date of the levy of their execution. Did they levy on the land, or only on Purinton's interest in the land? The land was shown by the records to be Purinton's land,—an unqualified estate in fee granted to him by the state. Why should the sheriff not levy on the land? And why is it contended that he only levied on the interest of Purinton in the land? Because the sheriff recites in the deed he gave the purchasers that "I, T. W. Gee, sheriff as aforesaid, did, upon the fourteenth day of January, A. D. 1878, levy on and seize all the estate, right, title, and interest which the said defendant so had in and to the premises hereinafter described;" said premises being the land in controversy. The words recited above, indicating the levy, are the very words which the statute uses in declaring what a sheriff's deed to land sold under execution shall convey. The deed, in this particular, is in the form in universal use in Texas in 1878, and now, in conveying land sold by sheriffs under execution. The land appearing on the record to be the property of the defendant in the execution, it was the duty of the sheriff to levy on and seize the land. The execution, with the sheriff's return thereon, is either destroyed or lost, so that it cannot now be found. It is admitted that the sheriff had a valid execution, and that he levied it, executed it, and returned it to the court out of which it issued. The presumption is that he levied it properly. There is nothing in the recitations of his deed to rebut that presumption, or to show in what words he indorsed on the execution his levy on the land. If it is assumed that he used the same words in indorsing his levy on the execution that are used in the recital in the deed, in our view, he levied on the land as fully as he could have done by any other form of words. Against the execution creditor, the unrecorded deed to Meek was void. The whole estate, right, title, and interest in the land was Purinton's, and subject to the levy. We find no error in the decree. It is affirmed.