**NEW NUECES HOTEL CO., Inc., et al. v. SORENSON.**

No. 8756.

Court of Civil Appeals of Texas. San Antonio.

March 2, 1932.

Rehearing Denied April 13, 1932.

A. V. Davis, of Corpus Christi, Battaile & Dutton, of Houston, John T. Suggs, of Dallas, Palmer Hutcheson and Vinson, Elkins, Sweeton & Weems, all of Houston, and Jas. M. Taylor, Boone & Raymer, and E. B. & Howell Ward, all of Corpus Christi, for appellants.

Sidney P. Chandler, of Corpus Christi, for appellee.

FLY, C. J.

The voluminous record in this case, with 369 pages in the transcript and 1,224 pages in the statement of facts, has been filed in this court in order to present a résumé of the matters evolved in the trial of a suit for damages arising from personal injuries, which trial it seems consumed three or more weeks in the district court. Appellee brought the action against the New Nueces Hotel Company, Inc., the city of Corpus Christi, and W. C. Thrailkill. The Southern Surety Company of Iowa and New York was impleaded in a cross-action by the hotel company to recover against Thrailkill, a contractor, and the insurance company. Thrailkill filed a cross-action against the city. The city also sought a recovery over against the hotel company. Each of the appellants, it seems, was seeking to shift the responsibility of the accident to the shoulders of some other. The injuries received by appellee were occasioned by an explosion of some kind of gas near the southwest corner of the hotel building. It was charged in the pleading of appellee that he was a prescription druggist in the Star Drug Store, occupying one of the stores in the hotel building, and was injured in the explosion. The cause was submitted to a jury on forty-two special issues, and on the answers returned a judgment was rendered as against all of the defendants, jointly and severally, in the sum of $9,200. There was also a judgment that no judgment be recovered against the insurance company.

The facts show that the hotel company owned and controlled a hotel building in Corpus Christi, known as the Nueces Hotel, which was bounded on the east by Water street, running along the coast of Corpus Christi Bay, on the west by Chaparral street, and on the south by Peoples street. There were stores in the rear of the hotel building fronting on Chaparral street. At the corner of Chaparral and Peoples streets was a drug store in which appellee was employed. The hotel front was on Water street, facing the bay front. A hall extended from the bay entrance through to the lobby and clerk's office, and thence along a continuation of the hall to the rear entrance. There was a wall between the rear hall and the drug store on the south, and the explosion occurred near, and partially wrecked, that wall. The explosion occurred on the 13th of May, 1929. The testimony showed that, although there was really no basement fitted up under the hotel, the excavation underneath had not been filled up with soil or otherwise, and water had accumulated through seepage or otherwise from the bay, and it was filled with decayed vegetable and animal matter brought in from the bay. This decayed matter and water had generated what is known as marsh

gas. It was also in proof that sewage had found its way into the excavation, and sewer gas in large quantities was produced. This gas was vile smelling and malodorous, and had escaped up into the hotel in such quantities as to be very disagreeable to occupants of the hotel all over the ground floor, and at times as far up as the fourth floor. The odors had become much stronger a few days before the explosion. There was no evidence definitely establishing the presence of loose natural gas in the excavation or in the hotel until after the explosion. The main gas pipe, from which the hotel was supplied with natural gas, was laid by the city in the sidewalk along the bay front, and after the explosion a break in that main pipe was discovered about 300 feet from where the explosion occurred. Thrailkill built an extension on the north side of the hotel, which extended from about the hotel proper out to the bay front north of the east entrance. The contractor built a bridge or connection above and across Water street connecting the annex with the machinery building across the street at the edge of the bay water. In erecting the pillars for the bridge or arcade, he tore up and rebuilt a part of the sidewalk which was laid by the city, after laying the gas pipe. The excavation made in the sidewalk by the contractor was filled in with stones, concrete, and other substances, and then the sidewalk was rebuilt over the mass.

The jury, in answer to the confusing issues of fact presented to them, answered that the explosion was caused by marsh gas, by sewer gas, by natural gas, by marsh gas and sewer gas combined, by marsh and natural gas combined, by sewer gas and natural gas combined, and by all the gases combined, and found that each of these was the proximate cause of the explosion. All the testimony tended to show the presence of the noxious marsh and sewer gases under the hotel for two years before the explosion. The water under the building ranged from a few inches to several feet, dependent on the height and force of the tide from the bay, which drove the water through the sand to the unprotected excavation under the building. Men went into the excavation with candles and lighted matches, where the gases were vile and very disagreeable to the olfactories. It was in evidence that natural gas is odorless, but exceedingly dangerous to life and quick to explode when an unshielded uncovered light is used in or near it. There was testimony to the effect that 12,000 cubic feet of natural gas was settling in the excavation of the hotel, but no one felt any ill effects from it, and there was no explosion until 1929. Dr. Schoch, a very learned professor in the University of Texas, swore that if the quantities of natural gas, as testified to, had gone into the excavation the explosion would have destroyed the hotel and created fires. Doctor Schoch is a well-known expert in how gases are created, and all the phenomena resulting from their explosion.

The evidence showed beyond dispute that the sewer pipes under the hotel were in such condition as to allow sewer gas to escape, and also that such gas and marsh gas formed a cesspool in the excavation underneath the hotel. There was testimony tending to prove that under certain circumstances the gases mentioned will explode. The jury found that singly, or in combination, each will explode and did explode. The facts all tend to prove that natural gas was never in the excavation until after the explosion, if it ever was there. The sinuous course it is contended the natural gas followed to obtain entrance to the excavation has little more than surmise and suspicion upon which to rest. No direct and positive connection is shown between the explosion and the break in the gas pipe 300 feet away. Natural gas was not shown to have been the essential agent in producing the explosion, but the jury found that the explosion occurred without the aid of that agency. The active agency of none but the hotel company was shown in producing the catastrophe. It formed and allowed to remain a spacious receptacle for water and gases, and through its continued negligence allowed those gases to accumulate and to remain, causing a putrid cesspool, lasting for many months, endangering, by its fetid odors, the comfort and health of patrons and employees. That this state of affairs could by diligence and care have been avoided is evidenced by the fact that since the explosion the excavation has been filled, the pipes have been repaired, and water excluded. The connection between the natural gas supposed to wend its tortuous sinuous course from a fracture in a gas main 300 feet away, to produce an explosion, is so conjectural, remote, and imaginary that it will not sustain a suit for personal injuries.

No doubt the court submitted many more issues, real and imaginary, than should have been submitted; still we do not discover that any harm was sustained by the hotel company. The jury was fully sustained in the finding that the explosion was occasioned by an explosion of the sewer and marsh gas, one or both, and that such gases were created by the gross negligence of the owners or agents who permitted a cesspool to stand underneath the hotel. The evidence is overwhelming and convincing on these issues. The pleadings are sufficient to sustain the verdict and judgment. The insurance company was released from liability, and, as we conclude that the beneficiary of its insurance was not guilty of negligence in any way in the erection of the annex and arcade, the insurance company should not be held liable.

There are probably 700 pages of briefs, typed and printed, but it is unnecessary to pass upon any of the various assignments of error or propositions of those appellants in whose favor the judgment of this court will be rendered, and our attention has been largely devoted to the 60 assignments of error filed by the hotel company. Most of the assignments are devoted to the facts, and are answered by our conclusions of fact. The assignment as to the misconduct of a juror in conversing with the attorney of appellee, concerning an account which the juror had and which he desired to collect through said attorney, is not sustained. The latter, it appeared, said nothing to the juror. The conduct of the juror was reprehensible, and the attorney should not have accepted the account, but should have told the juror he could not have any communication with him. The attorney in his brief states: "Upon my honor as an attorney, a leading counsel for the Hotel Company was present and heard the conversation with the juror." This was not denied by the attorney for the hotel company in his brief. This is of course outside the record, and is not sufficiently before this court to constitute a waiver of the impropriety of the conduct of juror and counsel. Such conduct cannot be upheld; but in this instance the conduct of the parties did not appear to influence the action of the juror or the jury in this case. This case is readily distinguishable from the case of Campbell v. Struve (Tex. Civ. App.) 30 S.W.(2d) 344.

The verdict for $9,200 is assailed as being excessive. Appellee was injured about the head, face, back, and over most of his body. The injuries were so healed that in thirty days he went to Aransas Pass where he worked for two weeks, and then returned to Corpus Christi, where he worked in the same drug store where he was hurt, for the same salary for nine months. He received $150 per month before the explosion, and the same afterwards. He then went to Victoria where he made about $175 a month. He had a salary cut in the latter part of 1930, when the sad and gloomy days of depression, unemployment, and wage and salary cuts covered our country from boundary to boundary. We are of the opinion that $5,000 is sufficient compensation for the injuries of appellee. It is true that he ascribes his nervousness to his injury, but that is rather debatable.

The judgment is reversed as to the city of Corpus Christi and W. C. Thrailkill, and judgment here rendered that, as to those parties, appellee take nothing; that the judgment of the lower court as to the insurance company be affirmed; that in case the appellee enters a remittitur of $4,200 within thirty days, then this judgment as against the New Nueces Hotel Company, Incorporated, will be affirmed as amended, otherwise the judgment will be reversed and the cause remanded. The costs will be divided equally between the hotel company and the appellee in case the remittitur is entered; otherwise all costs will be assessed against appellee.

### On Motion for Rehearing.

The motion in this case presents no tenable ground for changing the former opinion of this court. Since filing the motion appellee has filed a remittitur of $4,200, as suggested by the court, and has thereby waived all objections to the action of the court in reducing the amount of the judgment.

The facts claimed to connect the other appellants with the explosion are not sustained by the statement of facts, and the motion for rehearing is overruled.