### TEXAS MILK PRODUCTS CO. v. BIRTCHER et al.

### No. 5418.

Court of Civil Appeals of Texas. Texarkana.

March 6, 1940.

Rehearing Denied March 21, 1940.

Atchley & Vance, of Texarkana, for appellant.

Wm. V. Brown, of Texarkana, for appellees.

HALL, Justice.

This is a suit brought by appellees, V. T. Hannon and Johnnie Birtcher, against appellant, Texas Milk Products Company, for damages growing out of a collision of one of appellant's trucks with Hannon's gasoline truck driven by Birtcher. Suit was first instituted by Hannon for· damages to his truck and later Birtcher instituted suit against appellant· for alleged personal injuries suffered by him as a result of said collision. Both Hannon and Birtcher alleged substantially the same grounds of general and specific acts of negligence. Appellant's answer consisted of general demurrer, numerous special exceptions, general denial and a cross-action against both Hannon and Birtcher in which it is alleged that Birtcher, individually, and as agent of Hannon and driver of his gasoline truck, was guilty of general and specific acts of negligence. The two alleged causes. of action against appellant growing out of the same collision were consolidated and tried together in the court below. Trial was to a jury on special issues which resulted in a verdict for appellees. Judgment was entered for appellees for the damages found by the jury, from which appellant perfects its appeal to this court.

This suit arises out of a collision of appellant's milk truck with appellee Hannon's gasoline truck. Birtcher was driving Hannon's truck in a northerly direction at the time of the collision on the highway between Gilmer and Pittsburg. His truck was loaded with gasoline which had been purchased at Gladewater for Hannon's filling stations· at Texarkana. Appellant's truck was traveling south at the time of the collision and was being driven by J. H. Smelley. The following facts· are undisputed: The collision occurred nine or ten miles north of Gilmer. The road at that place is practically straight and runs north and south but is hilly. At the time of the collision, which was about 3:30 p. m., February 26, 1937, appellant's truck was going up an incline and Birtcher, of course, was going down said incline. The road is asphalt or black-top and is wide enough for two cars to pass with room to spare. The road was wet and slick from rain and sleet which had been falling for most of that day. After the collision the two trucks came to rest both were headed in a southerly direction towards Gilmer, appellant's truck off the west side of the road and appellee's truck just off the east side of the road. Appellant's truck was a little farther south than appellee's· and headed slightly to the southwest. The impact caused the gasoline truck to catch fire, which fire was com-

municated to appellant's truck, both of them being destroyed.

■■■ Appellant's third proposition is: "The issue of unavoidable accident having been amply supported by the pleadings and the proof in the case, the court should have submitted the issue of unavoidable accident as requested by appellant and it was error by the court in refusing to submit such issue to the jury." The exception to the court's charge upon which assignment of error No. 3 and proposition No. 3 are based is: "Defendant objects and excepts to the court's charge as a whole, because it does not submit to the jury for their determination the issue of unavoidable accident, and the defendant asserting that the issue of unavoidable accident is in the case, here and now respectfully asks the court to submit in appropriate terms a proper definition of unavoidable accident, and to submit an issue to the jury inquiring of them, in the manner and form required by law, whether or not the collision in question was the result of an unavoidable accident."

Nowhere does it appear in the record that appellant submitted in writing to the court a special issue embodying the question of unavoidable accident. If appellant desired the submission of such an issue to the jury, it was incumbent upon it to tender same to the court below. An objection alone, directed to the charge of the court for failure to submit an issue to the jury, is insufficient to present the question to this court for review. This rule has become the settled law of this state as reflected by the following decisions: Gulf C. & S. F. Rwy. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Hicks Rubber Co. v. Harper, Tex.Sup., 132 S.W.2d 579, Supreme Court affirming Hicks Rubber Co. v. Harper, Tex.Civ.App., 131 S.W.2d 749; Texas & N. O. Rwy. Co. v. Crow, 132 Tex. 465, 123 S.W.2d 649, affirming, Texas & N. O. Rwy. Co. v. Crow, Tex.Civ.App., 101 S.W.2d 274; Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738, writ refused; Forth Worth & D. C. Rwy. Co. v. Bozeman, Tex.Civ. App., 135 S.W.2d 275. This proposition is overruled.

By its seventh proposition appellant asserts that "it was misconduct for appellee Birtcher to purchase cold drinks for the juror E. B. Braley during the time the jury had the court's charge under consideration and deliberating thereon, before they had reached a verdict * * *" for which the trial court should have granted a new trial. It appears from the record herein that late in the afternoon of the second day of the trial after the cause had been submitted to the jury and after their deliberation for five or six hours, the court permitted them to separate for the night. After their separation, Braley, one of the jurors trying this case, went across the street to a store in front of the court house to get a cold drink. He testified before the court on motion to set aside the verdict that he saw appellee Birtcher "standing on the outside over there, and asked him to take a drink with me. And he told me 'No', that he would buy me a drink."

"Q. And he said that he would pay for your drink? A. Yes.

"Q. Do you remember, Mr. Braley, what you drank over there? A. A Coca Cola.

"Q. And Mr. Birtcher paid for it? A. Yes.

"Q. Of course you didn't ask him to do that? A. No, I first asked him to drink with me and he said No, he would buy me a drink.

"Q. And he volunteered to pay for yours? A. Yes, sir.

"Q. He turned and went back in the store with you to pay for the drink? A. Yes, he came back in there.

"Q. When you started to leave did Mr. Birtcher say to you, 'I'll see you in the morning?' A. I don't remember.

"Q. Now, when you came to the court house this morning, Mr. Braley, Mr. Birtcher, the plaintiff in this case, was seated on the seat on the Birdwell store over there? A. I believe he was.

"Q. You went in by yourself and bought a cold drink and drank by yourself this morning? A. Yes, and I asked him to go have a drink.

"Q. And when you went in the store to get your drink Mr. Birtcher and another gentleman also went in and got a drink? A. Yes, sir.

"Q. And were there some other men in there? A. I don't remember."

Cross-examination by Mr. Brown:

"Q. Mr. Braley, did you think anything about asking Mr. Birtcher to have a drink with you? A. No. I asked Judge Atchley (attorney for appellant) to come have a drink with me this morning.

"Q. So you asked Mr. Atchley this morning to have a drink with you? A. Yes, sir.

"Q. And he declined to take a drink with you? A. Yes, sir.

"Q. Now, at the time you met Mr. Birtcher at the store and asked him to have a drink with you, I will ask you whether or not you had anything about this case in mind. A. No. I went over there and saw him and wanted to get a drink, and hurry home. * * * And he said 'No,' I will pay for you a drink and I want them to drink with you.'"

The juror testified that before adjournment that afternoon the jury had answered all the issues down to the one making inquiry of Birtcher's damages. That the jury was in disagreement on that issue.

"A. * * * It was mixed up. We answered down to where we were to give his amount of damage and we could not agree on that yesterday evening. And we skipped that question, letting it ride till this morning and we found these were all here, and we debated on the question and that was where we came in here. We was mixed up with these numbers.

"Q. About the number of questions? A. Yes."

The juror further testified:

"Q. In other words, you had answered all the questions down to the one inquiring as to Birtcher's damages and had even answered some of the rest of the questions following the one about Birtcher's damages? A. Yes, sir.

"Q. You answered some of the rest of the questions, as well as the ones about Mr. Hannon's damages? A. Yes."

On cross-examination the juror testified further:

"Q. Did you have any discussion in the jury room before the court adjourned about Mr. Birtcher's damages? A. Yes, sir.

"Q. What did you have in mind, Mr. Braley, as to being the amount of damages to award him? A. I said two thousand dollars.

"Q. Did you say that out in the jury room? A. Yes.

"Q. Before the jury adjourned? A. Yes.

"Q. Did you agree upon the same amount this morning? A. After a lot of discussion. There was two that did not want to give it.

"Q. How many besides you didn't want to give the two thousand dollars? A. Seven to four.

"Q. Seven wanted to give the amount and four didn't? A. Yes.

* * * * * *

"Q. Were you one of the seven that wanted to give him two thousand dollars? A. Yes, sir.

"Q. And that was before he paid for your drink? A. Yes.

"Q. And this morning the other four came over to the seven, was that right? A. Yes, sir."

Appellee Birtcher testified substantially as the juror did about buying the Coca Cola for the juror. In addition Birtcher said he did not know Braley was a juror; that he only knew one member of the jury, a Mr. Hardin. He didn't remember having seen the juror Braley before.

"Q. And he asked you to have a drink with him? A. I think I was out on the ground, and he said, 'Have a coke?' And I said, 'No, but I will pay for you one.' I did not realize who he was or I would not have bought the coke.

"Q. Did you have any improper motive for doing that? A. No, sir.

"Q. Did you say anything else to him? A. No, sir, just said 'I will see you tomorrow,' paid for the coke and walked on out."

Both Birtcher and the juror were at the store the next morning following this incident, but there is nothing in the record to show that anything improper passed between them at that time. This testimony was taken the morning the jury returned its verdict, the very next morning after the incident occurred. Appellee Birtcher gave his testimony before the jury reached its verdict and the juror immediately after it returned its verdict.

The testimony of these two parties amounts to simply this: The juror, on being released from duty for the night, rushed over to the little store across the street to get a cold drink. On his way over he passed appellee Birtcher at the front of the store and asked him to have a drink. Birtcher stated that he had already had a drink but would pay for, and did pay for, a 5¢ Coca Cola for the juror, then turned and left the store, remarking, 'I'll see you in the morning,' which last remark the juror did not remember.

■ Is this misconduct on the part of the juror Braley and the successful party, Birtcher, under all the facts and circumstances here detailed of such nature as will require a reversal of the judgment of the court below? We think not. In arriving at this conclusion we are not unmindful of the well-recognized and established rule so ably presented in appellant's brief that "jurors and parties should keep strictly aloof from each other pending the trial; and if they do not, but meet under circumstances from which injury to a party may be reasonably apprehended, a verdict for the party engaging in the intercourse can not be sustained." We have carefully examined the authorities cited by appellant and many others besides. In practically all of them there is a fact situation of the successful party not only bestowing some favor upon a juror during the trial of a case, but also engaging in private conversation with the juror, or with ample opportunity for such private talk. In such circumstances the courts of this state have uniformly held that the successful party to the litigation will not be heard to explain his conduct, and a reversal will result as a matter of course. But here we have no private conversation and no opportunity for one. The record affirmatively shows that no statement was made by either party about the case. Birtcher did not recognize the juror when he bought the drink for him, neither did the juror remember Birtcher's saying that he would see him in the morning. Moreover, it is undisputed that all the special issues down to the one relating to the damages to appellee Birtcher, some ten or twelve in number, had been answered by the jury before this incident occurred. It is undisputed that several issues following the one relating to Birtcher's damages had been answered, including the one respecting the damage to appellee Hannon's truck. It is also undisputed that before adjournment of court on the afternoon this incident occurred, seven of the jury were in favor of allowing Birtcher $2,000 damages, the exact amount ultimately fixed by the jury; that the juror Braley was of that number and that he was outspoken in his views relating to said amount of damages. These facts and circumstances, to our minds, refute the contention that any injury was done appellant by the happening of this incident. As said by Judge Sellers of this court in St. Louis S. W. Rwy. v. Gilpin, Tex.Civ.App., 73 S.W.2d 1054, 1057, writ refused, "While we do not think the conduct of the juror was entirely proper under the circumstances, in that he should have left the courteous act of assisting the appellee down the stairs to some one else, yet we are far from the opinion that such conduct was sufficient to authorize the reversal of the case." See, also, Freeman v. Vetter, 61 Tex.Civ.App. 569, 130 S.W. 190, writ refused; New Nueces Hotel Co. v. Sorenson, Tex.Civ.App., 48 S.W.2d 365, reversed by Supreme Court on other grounds, 124 Tex. 175, 76 S.W.2d 488. While we in nowise condone the acts of the parties in engaging in this universal custom as reflected by this incident during the trial of the case, we can not bring ourselves to the conclusion that the act of buying a nickel Coca Cola for the juror Braley, in the circumstances here presented, is such misconduct on their part as will warrant a reversal of the judgment of the court below. This, no doubt, is the same view taken by the able trial judge who heard the evidence concerning this incident. Surely some weight should be given to his judgment in matters of this character. Northern Traction Co. v. Woodall, Tex.Civ.App., 294 S.W. 873, and cases there cited. This proposition is overruled.

■ By its first proposition appellant complains of the action of the trial court in permitting appellee Birtcher to testify as to the effect that his alleged injuries had on other parts of his body, the objection being that his testimony was an opinion of a non-expert witness. This record discloses that appellee Birtcher had theretofore given substantially the same testimony as that complained of here without objection or motion to strike. "The error, if any, was therefore harmless." Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090, 1092. The proposition is overruled.

We have carefully examined all other propositions and assignments brought forward, and they are believed to be without merit and are respectfully overruled.

The judgment is affirmed.

WILLIAMS, J., disqualified, not sitting.