OTTO ALBERS v. SAN ANTONIO & ARANSAS PASS RAILWAY
COMPANY.

Decided May 25, 1904.

**1.—Overflow—Charge—Contributory Negligence.**

It was error to so charge as to preclude plaintiff from recovery if found guilty of contributory negligence, when the evidence tends to show that the injury (damage to his cotton by overflow caused by a railway embankment) was only partly attributable to such negligence of plaintiff.

**2.—Railway—Overflow—Negligence—Charge.**

Requested charge held proper to be given on the liability of a railway for causing overflow of plaintiff's premises by the choking up of waterways in its roadbed.

**3.—Misconduct of Juror.**

It was improper and, it seems, ground for a new trial, that a juror, during the trial spent the night as guest of a witness for the defendant railway company, who was the holder of a pass over its road and on bad terms with the plaintiff, and whose brother-in-law, defendant's attorney, was also a guest there, though they did not discuss the case.

Appeal from the County Court of Lee. Tried below before Hon. John H. Tate.

*Wm. O. Bowers* and *Harris & Simmang,* for appellant.

*Duncan, Wolters & Lane, O. W. Watson,* and *W. L. Eason,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This is a suit brought by the appellant, plaintiff below, against appellee for damages in the aggregate sum of $447.42, alleged to have been sustained by reason of two overflows of appellant's crops of corn and cotton, one in September, 1901, and the other in July, 1902; said amount including alleged damages to certain cotton in the cotton house of appellant, which was alleged to have been injured by said overflows. Said overflows being alleged to have been caused by the negligence of appellee in the improper construction of its railroad embankment, and failure to provide sufficient sluices, culverts, etc., for carrying off the water.

Appellee, defendant below, answered by general denial, and also specially answered that during the different days and dates set out in plaintiff's petition the country was visited with heavy and unprecedented rainfalls, and that if plaintiff's crops were overflowed and destroyed it was due to said heavy floods, and not to any negligence and unskillful construction of its roadbed, dump, cuts or fills; and further specially answered that plaintiff was guilty of contributory negligence in this, that the plaintiff built and maintained his cotton house in the slough that runs through plaintiff's land, where the water for a long number of years has overflowed, and where plaintiff knew, when he so stored his cotton therein, that same would overflow with very slight rains.

The trial before a jury resulted in a verdict in favor of the appellee, defendant below, upon which verdict judgment was rendered.

Appellant in his fifth assignment of error complains of the following paragraph of the main charge of the court: "That unless you find that the plaintiff Albers, in constructing his cotton house where he did, and in placing his cotton therein, was guilty of contributory negligence; that is, that he failed to exercise that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances." The evidence tends to show that the cotton and cotton seed in appellant's cotton house would have been injured to some extent by the overflow, notwithstanding the embankment of appellee's railway. It also tends to show that the injury to the cotton and cotton seed was increased by reason of the water being caused to rise higher in said cotton house on account of said embankment. Appellee would not be liable for the damages caused by the overflow independent of its embankment, but it would be liable for such additional damages as were caused by reason of said embankment. The issue of contributory negligence was not raised by the testimony. If the whole or any part of the injury to the said cotton or cotton seed in said cotton house was caused by the overflow, independent of appellee's embankment, then appellee would be authorized to show this as a matter of defense. We therefore sustain appellant's said assignment of error.

In his tenth assignment of error, appellant complains of the refusal of the court to give to the jury the following special charge requested by him: "Railway companies are required to construct all necessary culverts or sluices as the natural lay of the land requires for the necessary drainage thereof; and in case of their failure to do so, they are responsible for all damages to lands and crops by reason of their negligence; and you are therefore instructed that if you find from the evidence that the defendant constructed two trestles, culverts or bridges under its railroad track and embankment, and that the said trestles, culverts or bridges were of insufficient width to admit the passage of the water occasioned by rainfalls or occasioned by extraordinary rainfalls, such as the defendant could have reasonably anticipated, and such as have occurred in the memory of men then living; or if you find from the evidence that said trestles, bridges or culverts were so constructed as to cause wood, logs and trash and other debris to lodge against, choke up, prevent and check the passage of water through the same; and if you further believe that by reason of said construction of said trestles, culverts or bridges (if you believe the same was so constructed) the rainfall and water was dammed up and formed a lake, and that said water was forced back up and inundated plaintiff's lands, damaged the plaintiff's crop and submerged and damaged the seed cotton in plaintiff's cotton house (if you believe that said crop of seed cotton was so damaged), then in either event defendant would be liable for damages incurred thereby."

The allegations in appellant's petition, and the proof adduced upon the trial, authorized and required the court to give this special instruction to the jury, and it was error for the court to refuse same. Rev.

Stats. 1895, art. 4436; Gulf C. & S. F. Ry. Co. v. Helsley, 62 Texas, 593; Gulf C. & S. F. Ry. Co. v. Pomeroy, 67 Texas, 498; Gulf C. & S. Ry. Co. v. Holliday, 65 Texas, 512; Gulf C. & S. F. Ry. Co. v. Pool, 70 Texas, 713.

Appellant's fifteenth assignment of error complains of the alleged misconduct of the juror W. J. Kaufman. By the testimony of J. R. Folkes, submitted by the appellant on his motion for new trial, it appears that said witness was the county clerk of Lee County at the time of the trial, and that he was not on friendly terms with the appellant Albers, and that he had a free pass at that time over the line of appellee's railway. That after the juror Kaufman had been sworn and selected as a juror in the cause, and before the verdict was rendered, said witness invited said juror to go home with him and stay all night, and that one of the attorneys for the appellee accompanied them and also stayed all night with said witness; that the attorney was the brother-in-law of said witness. Said witness testified that the said juror and said attorney ate supper at his house that night, and slept at his house and ate breakfast there the next morning; that he did not charge either said juror or said attorney anything. He also testified that "We did not discuss the case at that time."

There is nothing in the record to show that either the juror or the attorney testified upon the hearing of the motion for new trial, or in any way made any statement or explanation in reference to their staying all night with the witness Folkes and eating supper and breakfast with him.

This conduct of the juror in going home with and accepting favors from a party unfriendly to the plaintiff in the suit, and who was friendly and under obligation to the defendant, accompanied by the attorney for the latter, was improper and should not have occurred. As was said by Chief Justice Fisher in Marshall v. Watson, 16 Texas Civ. App., 127, 40 S. W. Rep., 352: "The policy of the law is that the jurors selected shall not only be impartial at the time this is done, but shall remain so during the progress of the trial. The party who is to be affected by their verdict ought not be suffered to approach them and confer favors and benefits upon them." A juror after being selected to try a case should so conduct and demean himself from that time until his verdict is rendered, as not to give the unsuccessful party any reason whatever to suspect his being improperly influenced by the successful party.

In the case of Gulf C. & S. F. Ry. Co. v. Schroeder, 25 S. W. Rep., 306, in discussing the alleged misconduct of a juror, the Court of Civil Appeals of the First District used this language: "The fountains of public justice must be kept free from every pollution and defilement, and the administration of the law by the courts must, as far as it is in human power to do so, be placed above and beyond even the suspicion of injustice or corruption."

Appellant in his second, fourth and seventh assignments of error com-

plains of the omission of the court in the general charge to state accurately the amount of the items of damages alleged in appellant's petition. Such omissions should have been corrected by special charges requested by appellant.

We have considered the other assigned errors of appellant, but are of opinion none of them are well taken, and therefore overrule them.

For the errors above indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*