TEXAS MILK PRODUCTS COMPANY V. JOHNNIE BIRTCHER ET AL.

No. 7742. Decided December 17, 1941.
Rehearing overruled January 14, 1942.
(157 S. W., 2d Series, 633.)

*Atchley & Vance,* of Texarkana, for plaintiff in error.

The action of a juror in accepting cold drinks, purchased by a plaintiff, in the case in which the said juror was serving, and in their conversing while consuming said drinks, during a time when the said jury had the case under consideration and before they had decided upon a verdict, is such misconduct, which is incapable of explanation, that a verdict so procured should not be permitted to stand as the basis of a judgment for said plaintiff, and it was error for the trial court to overrule defendant's motion to declare a mistrial. Carrington v. Southern Neon Sign Mfg. Co., 43 S. W. (2d) 971; Albers v. San Antonio, A. & P. Ry. Co., 81 S. W. 828; Marshall v. Watson, 40 S. W. 352.

*William V. Brown,* of Texarkana, for defendants in error.

The determination of a motion for new trial on the ground of misconduct is discretionary with the court, and unless it

can be shown from the entire record that the trial court abused its discretion, and that damage or harm resulted to the party as a result of such ruling, it should be sustained. Parks v. Missouri, K. & T. Ry. Co., 19 S. W. (2d) 373; St. Louis, S. W. Ry. Co. v. Gilpin, 73 S. W. (2d) 1054.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

In this case the plaintiffs, Johnnie Birtcher and others, recovered judgment against the defendant for damages for personal injuries growing out of an automobile collision. The only material question to be determined is whether there was such misconduct on the part of the plaintiff Birtcher and one of the jurors as to require a new trial.

The case was submitted to the jury on special issues late in the afternoon. After the jury had deliberated for five or six hours, and had answered many of the questions submitted to them, but had not reached a decision as to the amount of damages to be awarded to the plaintiff Birtcher, the court permitted the jurors to separate for the night. Immediately after the separation, one of the jurors, E. B. Braley, went across the street from the courthouse to a small store and cafe, where he met plaintiff Birtcher standing outside the store and asked him to have a cold drink with him. Birtcher declined, saying he had already had a drink but that he would buy one for Braley; whereupon the two entered the store. Braley ordered a coca cola, for which Birtcher paid the store five cents. After paying for the drink Birtcher said, "I will see you in the morning," and left the store. The following morning Birtcher was seated outside the same store, talking with a man named Jernigan, when Braley entered the store and purchased a coca cola for himself. Thereafter Birtcher and Jernigan also entered the store, and each drank a cold drink. There is no testimony that either Birtcher or Jernigan then had any conversation with Braley.

The attorney for defendant, being apprised of these two occurrences, filed a motion to discharge the jury and declare a mistrial. The court, after hearing the testimony of Birtcher, overruled the motion. After the jury had reached its verdict, and before the verdict was received, defendant filed a second motion, requesting the court to refuse to accept the verdict.

The court, after hearing the testimony of Braley, overruled that motion.

The court had submitted twenty-seven special issues to the jury. It is undisputed that all the issues submitted to the jury down to the one relating to the amount of damages to be awarded Birtcher, eight in number, had been answered before the jury had been released that afternoon; that in answer to issue No. 9 seven of the eleven jurors (there being only eleven men on the jury) were in favor of allowing Birtcher $2,000.00, and that Braley was one of the seven and had so informed the other jurors. Not being able to agree on the amount of Birtcher's damages, the jury skipped that question and went on to answer the remaining issues; and had answered several of them before separating for the night. Of the twelve or thirteen issues not answered that evening, six were submitted conditionally and were never answered. The amount of damages ultimately awarded to Birtcher the following morning was $2,000.00, the exact amount contended for by Braley and six other jurors the preceding day before the jury separated for the night. All the remaining issues were answered favorably to Birtcher.

Judgment was rendered in favor of Birtcher, and on appeal it was affirmed by the Court of Civil Appeals. 138 S. W. (2d) 285.

That the conduct of the plaintiff Birtcher and the juror Braley was improper, is established by an unbroken line of decisions in this State. Marshall v. Watson, 40 S. W. 352; Gulf, C. & S. F. Ry. Co. v. Matthews, 66 S. W. 588 (writ refused); Beazley v. Denson, 40 Texas 416; Larson v. Levy, 57 S. W. 52; Palm v. Chernowsky, 67 S. W. 165; Albers v. San Antonio & A. P. Ry. Co., 81 S. W. 828; First National Bank v. Hix, 164 S. W. 1035; Gulf, C. & S. F. Ry. Co. v. Schroeder, 25 S. W. 306; Oliphant v. Buie, 134 S. W. (2d) 751; Campbell v. Struve, 30 S. W. (2d) 344; Carrington v. Southern Neon Sign Mfg. Co., 43 S. W. (2d) 971; St. Louis Southwestern Ry. Co. of Texas v. Gilpin, 73 S. W. (2d) 1054 (writ refused). In the case of Marshall v. Watson, supra, at a recess period during the trial two of the jurors had dinner with the plaintiff at a restaurant at plaintiff's expense. In holding that this constituted such misconduct as to require a new trial, the court said:

"The policy of the law is that the jurors selected shall not only be impartial at the time this is done, but shall remain

so during the progress of the trial. The party who is to be affected by their verdict ought not be suffered to approach them, and confer favors and benefits upon them. While his purpose and intention may be ever so innocent, still it may have the effect of producing an influence that possibly he did not foresee. If a practice of this character was permitted to go unchallenged, it would be difficult to draw the line, and say when it should cease, and the best policy to pursue is to prevent it altogether." In the case of Gulf, C. & S. F. Ry. Co. v. Matthews, supra, a juror and one Woosley, who was managing plaintiff's case, had a drink together, the juror paying for the drinks. Later they had dinner at Woosley's expense, and then the juror bought cigars for both of them. They had a conversation on the street that lasted several minutes, but both of them testified that their conversation was purely social and that the case was not mentioned. In holding that this constituted such misconduct as to require a new trial, the court said:

"The juror may have been entirely innocent of any wrong intention, and it is even possible that the eating, drinking, smoking, and social intercourse with the kinsman and manager of the plaintiff did not affect his verdict. However, such conduct was reasonably calculated to do so, and may have done so without the juror knowing it. No matter how innocent the parties may have been, their conduct was improper, and it is impossible to say that injury to the defendant did not result from it. The only safe rule to adopt upon a question like this is to require of the jurors and interested parties such circumspection as will prevent all suspicion of improper influence. Jurors and parties should keep strictly aloof from each other pending the trial, and if they do not, but meet under circumstances from which injury to the other party may be reasonably apprehended, a verdict for the party engaging in intercourse with the juror cannot be sustained. Such a transaction is incapable of explanation. If parties were permitted to excuse improper conduct of this character on the ground that no wrong was intended, and probably no injury was done, it would be impossible to draw the line anywhere short of absolute corruption. We are unwilling to lend encouragement to practices which, if tolerated, would undermine the purity and efficiency of our jury system." In the case of Campbell v. Struve, supra, the plaintiff Struve, the attorneys on both sides, and a juror named Hoffman all took their meals at the same hotel during the trial, each paying for his own meal. On one occasion the juror Hoffman rode to the hotel in the plaintiff's car with the

plaintiff and his attorney, and after they had had their dinner, returned in the same automobile to the courthouse. Each party paid for his own dinner and the case was not mentioned. Justice Smith in holding that such conduct required a new trial said that the two rides "were open and above board, and transpired without design or intention on the part of the parties or their counsel of thereby exercising an influence upon the juror." The court further said:

"The well-known character and reputation of counsel preclude any charge or interference of intentional wrongdoing upon their part. But the facts remain nevertheless that this juror accepted favors of appellee and his counsel upon three separate occasions during the course of the trial, in contravention of the spirit of the law which prohibits communication or unnecessary contact between jurors and litigants and their counsel during the trial of causes. It does not seem to be material that these infractions were induced by the juror, or were thrust by the juror upon appellee and his counsel, or that in the very nature of the case they could not have been avoided by the latter without risking offense to the juror. It may be true, as urged by appellee, that each of the favors shown the juror was but a simple act of common courtesy, although in our opinion the hauling of the juror from Jourdanton to San Antonio constituted a relatively marked favor, by which he was saved bus fare. This transaction was thust upon appellee's counsel by the juror, and its offensiveness was largely neutralized by the knowledge, acquiescence, and participation of appellant's counsel, and objection thereto was waived, as we have held. But the conduct of the same juror in inviting and accepting the additional favors from the same party and his counsel amounts, in our opinion, to such a violation of the spirit and policy of the law as to require reversal of the judgment in this cause.

"Conceding that appellee and his counsel acted in good faith in each of the three transactions, and that the juror was not knowingly influenced in his decision of the case in favor of appellee by favors shown him, the mind of the juror, without intending any harm, might well have been unconsciously turned in the direction of those who had thus consistently favored him upon the three occasions in question."

In 55 A. L. R., p. 756, it is said:

"It may be stated as a general rule that the furnishing of refreshments or entertainment to a juror or to the jury by the prevailing party or his attorney during the trial, and before the rendition of a final verdict, constitutes ground for a new trial." Many foreign authorities are cited in support of the rule. Numerous other state decisions could be cited and quoted from sustaining the ruling hereinabove announced.

It is true that in some respects the matter of treating another to a drink of coca cola is a common, everday practice that is looked upon as a matter of common courtesy, entailing no special obligation on the part of the recipient. It must be remembered, however, that it has a tendency to create a feeling of obligation such as should not be permitted between litigant and juror in the delicate matter of the trial of a lawsuit, and that, as said in some of the above cases, we must draw the line somewhere. If a party may thus lawfully treat one juror, he may lawfully so treat all of them; and this in turn would authorize his adversary to do likewise. Such practice would put the parties in a race with each other to win the favor of the jury by courtesies. It would ultimately make a jury trial a farce and bring the court into disgrace. The only safe way is to require the parties to leave the jurors alone during the trial. Measured by the standards hereinabove set out, the conduct of the plaintiff and the juror was improper.

Since misconduct occurred, under a well-established rule in this State the verdict must be set aside, if there is a reasonable doubt as to whether it affected the decision of the jury. Casstevens v. Texas & P. R. Co., 119 Texas 456, 32 S. W. (2d) 637. The mere fact that the juror testified that he was not affected by the misconduct is not alone sufficient to show lack of injury. Taylor v. General Exchange Ins. Corp. (Com. App.), 128 Texas 118, 96 S. W. (2d) 70; Republic Ins. Co. v. Hale, 128 Texas 616, 99 S. W. (2d) 909.

In the case at bar it appears that all of the issues had not been answered at the time the misconduct occurred, and that afterwards all of the remaining issues were answered favorably to the plaintiff. The plaintiff contends that since the offending juror had previously announced to the jury that he was in favor of giving the plaintiff damages in the sum of $2,000.00, and that he did not thereafter change his position,

is proof that no injury resulted. We are not in accord with this view. The evidence shows that at the time the jury was excused for the evening, four jurors were against giving plaintiff damages in the sum of $2,000.00. The question was discussed again the next morning after the plaintiff had treated the juror. If the plaintiff had not engaged in the improper conduct and thus put the juror under obligation to him, the juror in question might have yielded to the argument of the four jurors and have joined with them in a verdict for the defendant. A similar situation was considered by the court in First National Bank v. Hix, 164 S. W. 1035, and it was there said:

"* * * Courts should not speculate upon the innocence and intentions of the actors. If you did speculate, it would be safe to assume that this juror, if he had made up his mind against the cause of his friend, delicacy would have prevented him from accepting the hospitality and then render a verdict in conformity with his conclusions; having made up his mind in favor of his friend, if the other jurors should have presented strong arguments against the cause of the party extending the hospitality, most men would feel some embarrassment in breaking bread with another and then voting against his cause, the litigant presumably believing, and most litigants do, that his cause was meritorius and just. It may be said that this is not the record here, but the answer is that it is the tendency generally upon which the rule is based. These parties may be as innocent as the spoken words assert, and, of course, we do not impute guilt in any sense, but the law condemns the act, however innocent it may be in fact."

We believe that under the testimony in this case, and the unbroken line of decisions in similar cases, the misconduct was such as to require a new trial.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and the cause remanded for a new trial.

Opinion delivered December 17, 1941.

Rehearing overruled January 14, 1942.