**Robert HUNNICUTT, Acting By and Through his Guardian ad litem, Harry Taylor, Appellant,**

v.

**Billy Roy CLARK, Appellee.**

No. 7879.

Court of Civil Appeals of Texas. Texarkana.

April 2, 1968.

Rehearing Denied May 14, 1968.

Harry Taylor, Mt. Pleasant, Cahill Hitt, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

B. D. Moye, Old & Moye, Mt. Pleasant, for appellee.

FANNING, Justice.

Billy Roy Clark sued Robert Hunnicutt, a minor, to recover damages in the sum of $24,359.50, for alleged personal injuries and property damages arising from Clark's automobile being struck from the rear by the automobile driven by Hunnicutt on May 13, 1966, at a street intersection in Mount Pleasant, Texas. A Guardian ad Litem was appointed by the trial court to represent the interests of the minor defendant Hunnicutt.

Plaintiff Clark had stopped his automobile at a street intersection in response to a red traffic control light and had been sitting there for three or four seconds when his automobile was struck from behind by an automobile being driven by defendant Hunnicutt.

Liability of defendant was admitted and stipulated in open court and it was further stipulated that the only question left for the determination of the jury was the amount of damages, if any, to be paid appellee. After hearing medical and lay testimony supporting appellee's claim for damages, and only three rebuttal witnesses including the defendant-appellant, who testified mainly to their estimate of the speed of appellant's vehicle at the time of the collision, and with the defendant not offering any medical witness, the jury returned a verdict in favor of plaintiff for the various elements of damages submitted, in the aggregate sum of $8,926.45, and the trial court rendered a judgment in such amount for the plaintiff. Defendant-appellant has appealed.

Defendant-appellant on appeal presents no points contending that the verdict of the jury was excessive or was so against the great weight and preponderance of the

evidence as to be clearly wrong and manifestly unjust.

Appellant presents two points on appeal which read as follows:

### "POINT OF ERROR NO. 1

"The trial court erred in overruling appellant's motion for mistrial because the conduct of the juror, Mrs. H. Roy Goolsby, violated the instructions of the trial court and Rule 226a, Tex.Rules Civ.Proc.

### "POINT OF ERROR NO. 2

"The trial court erred in not granting appellant's motion for new trial because the conduct of the juror, Mrs. H. Roy Goolsby, violated the instructions of the trial court, Rules 226(a) and 434, Tex. Rules Civ.Proc., and Article 1, Section 15, Constitution of the State of Texas."

After the jury was impaneled and duly instructed in the terms of Rule 226a Tex. R.Civ.P., a juror, Mrs. Goolsby, solicited and obtained a ride from appellee's brother, James Clark. James Clark had been in the courtroom prior thereto during the selection of the jury and knew that Mrs. Goolsby was a juror. The ride was for four or five blocks from the courthouse to Mrs. Goolsby's home; during said ride neither James Clark nor Mrs. Goolsby discussed the case. Mrs. Goolsby knew James Clark and had ridden with him before in a car pool arrangement. Juror Thomas saw Mrs. Goolsby ride with James Clark and reported the matter to the trial court. Appellant's attorneys moved for a mistrial. The trial court after hearing the evidence adduced on the motion for mistrial overruled said motion, and cautioned jurors Goolsby and Thomas not to mention the same to any of the other jurors and to disregard same. The trial proceeded to verdict. On motion for new trial evidence was introduced pro and con with reference to the issue of alleged jury misconduct. After hearing all the evidence adduced on the motion for new trial with reference to alleged jury misconduct, the trial court overruled the motion for new trial. No fact findings were made or requested with reference to the issues relating to alleged jury misconduct.

The approved jury instructions under Rule 226a Tex.R.Civ.P., which were given orally and in writing to the jury in the case at bar, provide in part as follows:

"1. Do not mingle with nor talk to the lawyers, the witnesses, the parties, or any other person who might be connected with or interested in the case, except for casual greetings. * * *

"2. Do not accept from or give to any of those persons any favors, however slight, such as rides, food or refreshments."

■ It is in essence appellant's position that the giving of the ride to the juror Mrs. Goolsby, by appellee's brother, James Clark, was jury misconduct as a matter of law and constitutes probable harm as a matter of law. On the motion for new trial appellant, offered among other matters, certain testimony from Mr. Huff, an insurance adjuster who had talked to James Clark and sought to prove by Mr. Huff that the automobile in question belonged to James Clark, that he therefore had a pecuniary interest in the case, that James Clark discussed proposed settlement of his brother's claim and contended that his brother's car had not been properly repaired, and appellant further attempted to prove that James Clark had intended to be a witness in the case with respect to the before and after value of the automobile in question, and related other matters and attempted to introduce certain alleged business records, which were excluded by the trial court, and we think were properly excluded under the record in this case. James Clark was not subpoenaed as a witness and he did not appear as a witness. James Clark testified to the effect that the car belonged to his brother and not to him (plaintiff Billy Roy Clark in his testimony on the merits also testified that the car in question was owned by him and not by his brother), that he had no pecuniary interest

in the lawsuit, that he did not help prepare the lawsuit for trial, that he did not select or have anything to do with the hiring of the attorneys in the case, that he was not a witness in the case, that although he talked to Mr. Huff, the insurance adjuster, on two or three occasions which conversations he testified were absolutely unsolicited by him. James Clark's version of the contacts of Mr. Huff with him were apparently believed by the trial court rather than Mr. Huff's version of the matter. The credibility of James Clark and Mr. Huff and the weight to be given their respective versions of the matter were of course matters within the province of the trial court to determine.

■ Since the trial court made no findings of fact it must be presumed that the trial court found all controverted facts in support of its judgment overruling the motion for new trial. See Sims v. McKnight, Tex.Civ.App., 420 S.W.2d 173, no writ (1967) and authorities cited therein.

In view of the trial court's implied fact findings in support of its judgment in overruling the motion for new trial, it must be held that the trial court found to the effect that James Clark did not have such a sufficient interest or connection with the case as to make the giving of the ride to the juror by James Clark harmful jury misconduct under the record in this case.

■ James Clark did not have any pecuniary interest in the lawsuit, he was not a witness, he was not an attorney in the case, and he was not managing or directing his brother's case. We think James Clark did not have a sufficient connection with the case to place him in the category of a person "interested in or connected with the case" which would place him in an analogous position of a party or attorney or such interested party who by the giving of an unsolicited ride to a juror would constitute the same as such grave misconduct creating probable harm as a matter of law to bring this case within the McCaslin case

hereinafter referred to. We think this case under the factual situation here should be governed by rules of law enunciated in the Gregory case, hereinafter referred to.

The case of Texas Employers Insurance Association v. Brooks, Tex.Civ.App., 414 S.W.2d 945, no writ (1967), cited and relied upon by appellant, holds that the giving to a juror of an automobile ride from the courthouse to the juror's home, on the first day of the trial by a successful litigant and on the second day by the litigant's brother-in-law with litigant and his wife also in the automobile, was improper and called for the granting of a mistrial, despite the showing that the juror solicited each ride and that the case was not discussed during the rides. We quote in part from the court's decision, which heavily relies upon the McCaslin case, as follows:

"Testimony was heard upon such motion for mistrial and the record shows the following: One of the jurors came up to plaintiff and his wife the first day of the trial and asked them if she could ride to Port Arthur with them at the end of the day if she missed her bus. She was told that she could and the juror did ride with them from the courthouse in Beaumont to her home in Port Arthur. The second day of the trial once again this same juror asked for a ride, and was again given a ride by plaintiff's brother-in-law with plaintiff and his wife also being in the automobile.

"Plaintiff contends that inasmuch as the record shows that the case was never mentioned, and defendant has not demonstrated that it suffered probable harm, that the trial court properly overruled the motion for mistrial citing Rules 327 and 434, Texas Rules of Civil Procedure. Plaintiff also cites many cases involving jury· misconduct holding that 'probable harm' must be shown, however, none of these cases involve the precise point raised in this case.

"We do not consider this to be the typical jury-misconduct case in which an

improper communication is made to the jury or in which the jury received other testimony, or an incorrect answer was given on voir dire examination. The direct point involved here is whether a party to a suit may confer some special favor upon a juror, even though the favor is solicited by the juror. We have concluded that the sanctity of trial by jury must be protected and that the act complained of here cannot be condoned or permitted. It is human nature that a special favor results in a special obligation and jurors must be free of any obligation to either party.

"This decision is in line with all of the cases cited to this court, which are as follows: Beazley v. Denson, 40 Tex. 416, a case in which a juror was treated to cheese, crackers and a drink by the prevailing party. Albers v. San Antonio & A. P. Ry. Co., 36 Tex.Civ.App. 186, 81 S.W. 828, a case in which a juror spent the night in the home of a witness for one of the parties accompanied by that party's attorney. Texas Milk Products Co. v. Birtcher, 138 Tex. 178, 157 S.W. 2d 633, a case in which plaintiff bought a juror a coca cola. Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643, a case in which 2 or 3 jurors played golf with an attorney representing one of the parties. Campbell v. Struve, Tex.Civ. App., 30 S.W.2d 344, a case in which a juror requested and secured a ride in an automobile with the prevailing party a distance of about 5 blocks.

"Plaintiff insists that defendant has shown nothing more than that the juror was given transportation and that defendant has not shown any probable harm. We hold that defendant has gone as far as the law requires it to go in this type of case. 'Our constitution provides that "The right of trial by jury shall remain inviolate." Article 1, § 15, Constitution. * * * This means a trial by a jury unaffected by bribes, promises of reward and improper requests to "do all you can to help me." ' Texas Employ-

ers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916.

"We hold as a matter of law that probable prejudice to defendant was shown under Rules 327 and 434, T.R.C. P."

In Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958), a plaintiff in a compensation case sought out a juror and requested the juror to "do all you can to help me." We quote from the court's opinion in McCaslin in part as follows:

"The doctrine of harmless error in this state is for the most part embraced in Rule 327, Texas Rules of Civil Procedure, which is applicable to jury misconduct, unlawful communications with the jury and the like, and Rules 434 and 503 which contain identical wording and relate to the Courts of Civil Appeals and the Supreme Court respectively. The pertinent parts of these rules, together with Rule 1, are set out in the margin. There is no requirement that the party asserting error must show injury beyond a reasonable probability in order to secure a reversal of a judgment. And in estimating the probability of injury, the act of overt misconduct in itself may be the most compelling factor in establishing prejudice. It is so in this case.

"While the briefs urge certain matters in extenuation of Mrs. McCaslin's conduct, such as lack of education and a probable failure to fully appreciate the purpose of the trial judge's instructions relating to the conduct of parties and jurors, nevertheless our norms of expected conduct must possess uniformity of application as to parties and *the overt act here involved amounts to tampering with the jury and must be classified and treated as such.* Such acts have never been regarded lightly by the Texas courts. Our constitution provides that 'The right of trial by jury shall remain inviolate.' Article 1, § 15, Constitution. Vernon's Ann.St. This means a trial by a jury unaffected by bribes, promises of

reward and improper requests to 'do all you can to help me.' * * * (Citing numerous authorities)" (Emphasis added)

\* \* \* \* \* \*

"The burden of the complaining party is met by showing that the trial which resulted in a judgment against him was materially unfair. Rule 327 does not preclude the drawing of logical inferences of prejudice and unfairness from the overt act itself for an action or occurrence may be so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of harm is met, prima facie at least, by simply showing the improper act and nothing more. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S. W.2d 115; Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856; Calvert, 'The Development of the Doctrine of Harmless Error in Texas', 31 Texas Law Review 1.

"The overt act of the plaintiff and prevailing party in the trial court in seeking out the juror and attempting to persuade her to 'do all you can help me' belongs in the category mentioned. The inference of unfairness and prejudice attending it is so strong that it could hardly be rebutted except by a showing that plaintiff was entitled to judgment as a matter of law. Cf. Calvert, supra, Note, 'The Harmless Error Rule Reviewed.' 47 Columbia Law Review, 450.

\* \* \* \* \* \*

"We hold as a matter of law that probable prejudice to the petitioner was shown under Rules 327 and 503. Barrington v. Duncan, 140 Tex. 510, 169 S. W.2d 462. * * *"

In St. Louis Southwestern Railway Company v. Gregory, 387 S.W.2d 27 (Tex. 1965), it was established that a juror was guilty of misconduct by stating to a fellow juror that the juror had heard that one of the decedents had been having trouble with the carburetor on his automobile the day before a fatal automobile-train collision and by asking a store keeper whether or not he had stated shortly after the collision that on the day preceding the collision that the decedent had been having carburetor trouble. The Supreme Court held that the mere proof of such misconduct did not establish that the trial was materially unfair as a matter of law and further held that such misconduct did not constitute reversible error under the record in the case. The court in Gregory held that the Mc-Caslin rule was not applicable to the facts in the Gregory case. We quote from the court's opinion in Gregory, supra, in part as follows:

"Bradford's conduct was in violation of instructions given to the jurors by the court during the course of the trial that they should not 'discuss the facts, or purported facts of the case, either among themselves, nor allow anyone to discuss same with them'; that they should 'not undertake any investigation or personal observations of any kind;' and 'not to go out and seek information or look for evidence.' Undoubtedly the trial court could have punished Bradford for contempt for violating its orders had it chosen to do so. But that does not mean that the plaintiffs were entitled to a new trial.

"Under the provisions of Rule 327, a party seeking a new trial because of misconduct of a juror has the burden of establishing to the satisfaction of the court that it 'reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted' to him. There are some types of misconduct, such as jury tampering, in which the burden of proving probable injury is discharged, prima facie, by mere proof of the overt act itself. See Texas Employers' Insurance Ass'n v. Mc-Caslin, 159 Tex. 273, 317 S.W.2d 916. We do not regard this as such a case. As said by the Court of Civil Appeals in Aetna Casualty and Surety Co. v. Perez, 360 S.W.2d 157, 160, in commenting on

the McCaslin rule, 'This is the rule, and a good one, but its extension into new areas flirts with the re-adoption of the discarded rule of presumed harm in misconduct cases.' Having concluded that mere proof of the acts of misconduct on the part of the juror Bradford does not establish that the trial was materially unfair to the plaintiffs, we examine the record to determine whether it discloses proof of probable injury to the plaintiffs. * * *"

The Supreme Court in Gregory, supra, after analyzing and discussing the questions of jury misconduct above referred to, held that under Rule 327, Tex.R.Civ.P., it could not presume that such misconduct resulted in probable injury to the appellants and further held upon a consideration of the entire record that reversible error was not shown under Rules 327, 434 and 503, Tex. R.Civ.P. In its opinion the Supreme Court also pointed out that both the trial court and the Court of Civil Appeals had held that the answers of the jury to the special issues were not against the great weight and preponderance of the evidence.

We think the case at bar is clearly distinguishable from the Brooks case cited by appellant, because in the Brooks case it was *the plaintiff* who gave the juror a ride and the plaintiff was present in the car when plaintiff's brother-in-law gave the juror a ride.

The case of Gulf, C. & S. F. Ry. Co. v. Matthews et al., 28 Tex.Civ.App. 92, 66 S. W. 588, no writ (1902) (decided before Rule 327 Tex.R.Civ.P.), cited by appellant, is clearly distinguishable from the facts in the case at bar as shown by the following quotation from the Matthews case:

"Pending the trial of this case in the district court, one of the jurors, who was afterwards selected as foreman of the jury, and J. W. Woosley, whose mother was a sister of J. L. Matthews, met during a recess of the court. The juror set up the drinks to Woosley. They then had dinner together, Woosley paying

therefor. After dinner the juror bought cigars for both. They had a private conversation on the streets, which lasted several minutes. *Woosley was looking after and managing the case for Mrs. Matthews. He employed the attorneys for the plaintiffs, and went to Ft. Worth to look up testimony.* He boarded at the same hotel with Mrs. Matthews during the trial. Woosley and the said juror lived at Whitewright, where they were in business. They were intimate friends. They testified that the case was not mentioned, that their meeting was accidental, and that their conversation was of a purely social nature. The juror bore a good reputation. These facts were shown on the hearing of defendant's motion for a new trial, and were insisted upon as a reason why the motion should be granted. We are of opinion that the point was well made, and that the trial court erred in not sustaining the motion upon that ground. The importance of guarding a jury engaged in the trial of a cause from improper influences is too well understood to require argument. While Woosley was not a party to this suit, and had no pecuniary interest in it, his connection with the case was such that it was manifest impropriety for a juror to exchange courtesies with him. The juror may have been entirely innocent of any wrong intention, and it is even possible that the eating, drinking, smoking, and social intercourse with the kinsman and manager of the plaintiffs did not affect his verdict. However, such conduct was reasonably calculated to do so, and may have done so without the juror knowing it. * * *" (Emphasis added).

We do not equate the facts in the case at bar with the factual situations in the McCaslin, Brooks, Matthews and other cases cited by appellant in its brief.

It is our view that the McCaslin case is not applicable here but that the Gregory case is applicable.

When the Gregory case is applied here we find the record barren of any circumstances which would show probable injury or reversible error with respect to the alleged jury misconduct under Rules 327 and 434, Tex.R.Civ.P. This is particularly true as there was no dispute as to liability and there are no contentions made that the verdict of the jury was excessive or that the answers of the jury were contrary to the great weight and preponderance of the evidence. Also an examination of the record clearly reveals that the verdict was not excessive and that the answers of the jury to the special issues were strongly supported by amply sufficient evidence of probative force and were not against the great weight and preponderance of the evidence. Thus the record here is barren of any proof or any reasonable inference that the trial was materially unfair to appellant.

It is our view that appellant's points do not present reversible error under the record in this case and said points are overruled. Rules 327 and 434, Tex.R.Civ. P.

The judgment of the trial court is affirmed.