Ray Wayne PHARO, et ux, Appellants,

v.

CHAMBERS COUNTY, Appellee.

No. 01–92–01113–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 9, 1995.

Rehearing Overruled March 9, 1995.

capture an armed robber who had led them on a high-speed chase.

The Pharos, who are Bryan's parents, sued the driver of the car, Chambers County, and DPS, asserting wrongful death and survival claims. The trial court directed a verdict in favor of DPS. In a 10 to two verdict, the jury found that Chambers County was not negligent.

### Contact between a Juror and a Deputy Sheriff

In point of error one, the Pharos argue that the trial court erred in denying their motion for new trial because, during the trial, one of the jurors had lunch, dinner, and other social contacts with a deputy sheriff, an employee of Chambers County. The Pharos contend that this contact violated the court's instruction to the jurors to not have contact with the parties to the lawsuit during trial and constituted reversible error. We disagree.

At the hearing on the motion for new trial, juror Loretta Pylant testified about her contacts with Ferris Collier, an employee of the Sheriff Department's criminal investigation division. She testified that she dated Collier and that she generally saw him in the evening and on weekends. During trial, she lunched with him twice, dined with him once, and had coffee with him and four other Sheriff's Department employees in the Sheriff's office. She did not discuss the case with him or with the other Sheriff's Department employees. During trial, she understood the parties to be "Chuck Morris [the Sheriff], and the officers that were on duty at the time and that were employed by Chambers County at the time the accident took place."

Collier testified that he was an employee of the county at the time of trial, but that he had not been employed by the county at the time of the accident. He confirmed the lunch and dinner dates with Pylant. He stated that the employees, not the Sheriff's Department, paid for the coffee Pylant drank. He did not discuss the case with Pylant, nor did he have anything to do with the investigation or trial.

Richard J. Clarkson, Beaumont, for appellants.

Michael L. Baker, Beaumont, for appellee.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

### OPINION

HEDGES, Justice.

Ray Wayne and Mary Alice Pharo appeal from a take nothing judgment in favor of Chambers County. We affirm.

### Statement of Facts

On October 10, 1983, four young men were driving home to Nederland from a concert in Houston. At 3:00 a.m., they crashed into a van stopped at a roadblock that had been set up by the Chambers County Sheriff's Department and the Department of Public Safety (DPS). Bryan Pharo, who was asleep in the front seat, was killed. The authorities had set up the roadblock in an effort to

Juror Susan Hudnall testified that she and other jurors saw Pylant and an employee of the Sheriff's Department having lunch together. She recognized Pylant's companion as a deputy because he was wearing a gun. Hudnall was surprised to see them together at lunch. She testified that Pylant had mentioned her relationship with Collier a number of times in the jury room.

The right to a fair and impartial trial is guaranteed by the Texas Constitution. *See* TEX. CONST. art. I, § 15; *Babcock v. Northwest Mem. Hosp.,* 767 S.W.2d 705, 708 (Tex.1989). A person who has a bias or prejudice in favor of or against a party is statutorily disqualified from serving as a juror. TEX.GOV'T CODE ANN. § 62.105(4) (VERNON SUPP.1995). A party is entitled to a trial by jury unaffected by bribes, promises of reward, or improper requests. *Texas Employers' Ins. Ass'n v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916, 919 (1958).

To obtain a new trial on the ground of jury misconduct, the complaining party must show (1) that the misconduct occurred, (2) that it was material, and (3) that the misconduct resulted in harm. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 419 (Tex.1985); *Ramsey v. Lucky Stores Inc.,* 853 S.W.2d 623, 635 (Tex.App.—Houston [1st Dist.] 1993, writ denied); TEX.R.CIV.P. 327. A trial court's ruling on a motion for new trial based on jury misconduct will be reversed only upon a showing of abuse of discretion. *Texas v. Wair,* 163 Tex. 69, 351 S.W.2d 878, 878 (1961).

While the acts the Pharos complain of unquestionably occurred, we do not characterize them as misconduct. The evidence does not show that Collier was so intimately connected with Chambers County in its capacity as a party that his contacts with Pylant violated the trial court's instructions not to mingle with or talk to parties. Nor do we believe that this consortium rose to the level of being so inimical to fairness that it denied the Pharos a fair trial.

We believe that the conduct complained about occurred because the trial court and the attorneys did not explain to the venire panel that current employees of the sheriff's department or the county could be considered to be improperly or inappropriately associated with a party merely because of their current employment status. Pylant answered on voir dire that she knew James Gallagher, one of the deputies appearing at trial who had been involved in the incident at issue. She was not questioned about her acquaintance with other sheriff's department employees apart from a general question about association with the sheriff himself. Before her own voir dire questioning, she observed that Mr. Nash, an employee of the county, was not challenged based on his employment. As we have previously stated, Pylant testified on motion for new trial that she understood the defendants to be limited to the sheriff and any officers who were on duty at the time of the accident or who were employed by the county at the time of the accident.

Although an employee of the sheriff's office, Collier had no pecuniary interest in the suit, he was not a witness, he was not an attorney in the case, and he was not directing or managing this lawsuit. *See Hunnicutt v. Clark,* 428 S.W.2d 691, 694 (Tex.Civ.App.—Texarkana 1968, no writ). He had not been employed by the county at the time of Bryan Pharo's death. He did not participate in the investigation of the accident, nor did he assist in preparation for trial. We find that the Pharos have not demonstrated juror misconduct. Collier's connection to Chambers County is sufficiently remote in this context to remove him from the position of party to the suit *or its representative.*

We acknowledge a number of older cases in which contacts with jurors required reversal. *Texas Employers' Ins. Ass'n. v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916 (1958) (plaintiff went to juror's office and asked her to "do all she could for her"); *Texas Milk Products Co. v. Birtcher,* 138 Tex. 178, 157 S.W.2d 633 (1941) (party purchased soft drink for juror); *Texas Employers' Ins. Ass'n. v. Brooks,* 414 S.W.2d 945 (Tex.Civ.App.—Beaumont 1967, no writ) (juror requested ride home from party and his brother-in-law); *Occidental Life Ins. Co. v. Duncan,* 404 S.W.2d 52 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.) (insured asked

juror for an aspirin). Those cases do not control our disposition because they involved direct contact between the juror and a party or an attorney. Because of Collier's remoteness to the lawsuit, we conclude that no improper influence on the jury was shown, and that the trial court did not abuse its discretion in refusing to grant a new trial based on Pylant's contacts with Collier.[1]

We overrule point of error one.

### Bailiff's Comments

In point of error two, the Pharos argue that a comment the trial court's bailiff made before the venire panel requires reversal. Specifically, they complain about his comment that "when we started talking about money, we needed to start talking about raising taxes."

In the motion for new trial hearing, bailiff Harvey Simon testified as follows:

Pharos' attorney: During or prior to the voir dire after the jury panel had been seated when you were passing out the cards to the jurors, a comment was made to you by a juror that the county needed to buy new cards or something similar to that and I think you made a statement that if you wanted to talk about—if you wanted to talk about the county spending money, you needed to talk about raising taxes. Did you make that statement?

Simon: Did not.

Pharos' attorney: Is there something different about the wording that I said?

Simon: Quite a bit of difference.

Pharos' attorney: Okay. How do you recall it being said?

Simon: The juror and I went to school together. We had—I guess all high school we went together and he told me that these were the same cards we use every time and we needed to get something done about these cards. I said for me to do something about the cards, I would have to raise the taxes.

. . . .

Pharos' attorney: The remarks that you recall making to the jury or making to your friend on the jury, was that loud enough that everyone could have heard it? Simon: I think there were people still being seated, coming in the courtroom. I don't know how loud I said it. I was busy and he got me off guard. It was a stupid, spontaneous remark.

The Pharos' attorney, Kevin Dutton, testified that he heard Simon's remark. He believed that the entire panel heard the remark because "a number of prospective jurors and pretty much all of the panel started laughing when [Simon] said that."

Another attorney, who had no connection with this case, testified on motion for new trial that she had a conversation with the bailiff while waiting to see the judge. The bailiff told her that the case involved a roadblock and plaintiffs from outside the county. He opined that the jury would not find for the plaintiffs because they knew that the money would come out of their own pockets. There is no suggestion that any member of the jury heard these remarks.

Juror Pylant testified that she remembered Simon's making a remark as the panel was leaving the room. His remark had something to do with "juror cards and the numbers that we had." She did not recall whether he had referred to raising taxes.

■ Contending that the comment poisoned the panel by suggesting that if the jury awarded damages to the plaintiffs, county taxes would have to be raised to pay them, the Pharos seek reversal on two grounds. First, they assert that the comment by the officer in charge of the jury was so egregious that it was error as a matter of law, citing *McCaslin*, 317 S.W.2d at 919; *see* TEX. R.CIV.P. 327(a). We disagree that error, if any, rose to that level.

■ Alternatively, the Pharos argue that the bailiff's comment constituted reversible

---

1. Contrary to the dissent's characterization of the majority view, we do not "reject" authority holding that "contacts between jurors and a party or a party's representative involving favors given, requested, or received, are so inimical to a fair trial, that no proof of harm is necessary." To the contrary, we hold that such authority does not apply because of Collier's remoteness to the County or its representative.

error because it violated the strictures of TEX.R.CIV.P. 283 and was an improper outside influence on the jury. Rule 283 governs the relationship between the officer in charge of the jury and members of the jury and with certain limited exceptions provides that he or she "shall not make nor permit any communication to be made to them. . . ."

■ We conclude that the bailiff's comment was nothing more than a harmless, casual comment about raising taxes in general in response to a question about the jury cards. Where there is no evidence that jurors related remarks to the case that would shortly come before them, such casual remarks, although improper, are harmless. *Kansas City S. Ry. v. Chaffin,* 658 S.W.2d 186, 189 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.); *Gulf Coast Sailboats, Inc. v. McGuire,* 616 S.W.2d 385, 386 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Because there is no evidence that any juror related the bailiff's remark about raising taxes to the case before them, the remark was, at most, harmless error.

We overrule point of error two.

### Juror Employed by the County

In point of error three, the Pharos contend that the trial court erred in refusing their challenge to a veniremember for cause based on his employment as a Chambers County Deputy Sheriff. Ezell L. Brown, a member of the venire panel, stated that he was a jailer for Chambers County and that the sheriff was his boss. The trial court denied the Pharos' motion to strike Brown for cause on the basis that he was an employee of the sheriff.

At the close of voir dire, before the jury was empaneled, counsel for the Pharos made the following objection:

Mr. Dutton: Your Honor, the plaintiff comes and again urges its motion for challenging for cause Juror No. 9, Mr. Brown, because he initially stated that he did have a bias in this case although he was—there was an attempt made to rehabilitate him and when it is shown that a bias is made, he cannot be rehabilitated.

Plaintiffs would once again assert its motion to strike Mr. Brown for cause.

The Court: Anything else, counsel?

Mr. Dutton: No, sir.

The Court: Denied.

Mr. Dutton: I object to that denial. I state that since I have used my six strikes and due to the refusal to strike Mr. Brown for cause, I object to his juror as being objectionable.

The Court: Thank you.

■ In order to preserve error in a trial court's refusal to strike a prospective juror for cause, the aggrieved party must inform the trial court before exercising its peremptory challenges that it would exhaust all peremptory challenges and that after exercising all peremptory challenges, specific objectionable jurors would remain on the jury list that it would otherwise have struck. *Hallett v. Houston Northwest Medical Ctr.,* 689 S.W.2d 888, 890 (Tex.1985).

■ We find that the Pharos did not fully comply with these requirements and therefore did not preserve their complaint concerning Brown. His statement that "I object to this juror as being objectionable" does not identify the juror he considers as objectionable. The identification of the objectionable juror for the first time in their brief does not preserve their error.

We overrule point of error three.

We affirm the judgment of the trial court.

O'CONNOR, Justice, dissenting.

I dissent. The primary issue in this case is whether the impartiality of the jury was compromised by improper contacts by an employee of the defendant and improper communications by a court officer. I would reverse and remand for trial.

### Improper Contacts

In point of error one, the plaintiffs contend the contacts between Pylant and Ferris Collier, an employee of the sheriff's criminal investigation division, during the trial violated the court's instructions to the jurors not to have contact with parties in a lawsuit

during the trial and amounted to reversible error. I agree.

In reaching its decision to affirm, the majority rejects as inapplicable a long line of cases, two of them from the Supreme Court, that hold that contacts between jurors and a party or a party's representative involving favors given, requested, or received, are so inimical to a fair trial, that no proof harm is necessary. *Texas Employers' Ins. Ass'n v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916, 921 (1958) (plaintiff went to juror's office and asked her to do all she could for her); *Texas Milk Products Co. v. Birtcher,* 138 Tex. 178, 157 S.W.2d 633, 634 (1941) (party purchased soft drink for juror); *Texas Employers' Ins. Ass'n v. Brooks,* 414 S.W.2d 945, 946 (Tex. Civ.App.—Beaumont 1967, no writ) (juror requested ride home from party to suit and his brother-in-law); *Occidental Life Ins. Co. v. Duncan,* 404 S.W.2d 52, 53 (Tex.Civ.App.— San Antonio 1966, writ ref'd n.r.e.) (insured asked juror for an aspirin); *see also Texas Employers' Ins. Ass'n v. Moore,* 549 S.W.2d 37, 39 (Tex.Civ.App.—El Paso 1977, no writ) (if jurors had drunk coffee supplied by one of the attorneys, it would have been reversible error). The majority also rejects the holding of *McCaslin,* that a juror's disavowal of influence derived from misconduct is not relevant. *McCaslin,* 317 S.W.2d at 920.

The majority holds that Collier was "sufficiently remote" from the County and its representative. Majority op. n. 1. I respectfully disagree. First, Collier was not "remote" from the representative of the County; as a County employee, Collier *was* a representative of the County. Second, Collier was employed by the Chambers County Sheriff's department, the entity the plaintiffs charged with the responsibility for the accident. Chambers County has a small sheriff's department. Third, Chambers County is a small county with relatively few lawsuits.[1] Collier, a member of the sheriff's department, dated Pylant, a member of the jury, and treated her to coffee at the sheriff's office during the trial.

The majority criticizes the trial judge *and the attorneys* for not explaining to the panel

that they should not consort with current members of the sheriff's department. Clearly it was not the role of the attorneys to instruct the jury on this matter. Under TEX. R.CIV.P. 226a, the judge must give the following instruction:

> Do not mingle with nor talk to the lawyers, the witnesses, the parties or any other person who might be connected with or interested in this case, except for casual greetings.

The instruction in rule 226a was sufficient to apprise the jurors that they could not consort with current members of the sheriff's department. Pylant admitted she knew the instructions applied to the sheriff. Yet, on two occasions she visited the sheriff's office and had coffee with his employees. Pylant's relationship with Collier and the sheriff's department went far beyond "casual" greetings permitted by rule 226a.

I would hold the meetings between juror Pylant and Collier, an employee of the County, during the trial were so contrary to fairness that proof of harm is not necessary. *See McCaslin,* 317 S.W.2d at 929. I would also hold it was not necessary for juror Pylant to admit to being influenced by the contacts. *Id.* at 920. Nor was it necessary for other jurors to testify that they were influenced by seeing Pylant consort with Ferris.

I would sustain point of error one.

### Improper Communications

In point of error two, the plaintiffs argue the trial court erred in denying their motion for new trial because the bailiff of the 344th District Court made statements to the entire panel before voir dire that prejudiced their case. The bailiff told the jury panel that if it "wanted to talk about the county spending money, [it] better talk about raising taxes."

The majority dismisses the comment as nothing more than a harmless and casual comment about raising taxes in general. The plaintiffs contend the bailiff's comment poisoned the jury panel because he told them that if they awarded money damages, their

---

1. The Texas Judicial System Annual Report for 1993, shows that Chambers County had ten cases involving vehicle accidents pending in district court at the end of fiscal 1992.

taxes would be increased to pay for the award. The plaintiffs claim the actions of the bailiff were so outrageous that they deprived the plaintiffs of their right to "trial by jury." I agree with the plaintiffs.

The bailiff's testimony is set out in the majority's opinion. The bailiff admitted that he was wearing a badge of a deputy sheriff of the Chambers County Sheriff's department at the time he made the remark to the panel. The bailiff testified he was not employed by the sheriff's department, but by the county, the named defendant in the suit.

The majority minimizes the effect of the testimony of the plaintiffs' attorney at the motion for new trial hearing. Kevin Dutton, one of the plaintiffs' attorneys, testified he heard the bailiff's comment. He said the bailiff was asked about the cards and said "if they wanted to speak with the county about spending money, they needed to talk about taxes being raised." When asked if the entire panel heard the remark, Dutton said he thought so because "a number of prospective jurors and pretty much all of the panel started laughing when he (the bailiff) said that." [2]

The majority misconstrues the effect of testimony of Mary Heafner, an attorney who does not represent the plaintiffs, who testified that she discussed the case with the bailiff. She testified that the bailiff described the plaintiffs as "those people [who] were not from here," and said the jury would not give them any money because they knew the money would come out of their own pockets. The majority dismisses Heafner's testimony with the statement that none of the jurors heard the bailiff's remarks to Heafner. That was not the point of her testimony. The point of her testimony was that the bailiff told her, a stranger to the litigation, that he knew the jurors would not vote for the plaintiffs because he told them any recovery would come out of their own pockets. Heafner's testimony about the bailiff's remark to her bolsters the plaintiffs' argument that the bailiff informed the panel that they would pay the judgment with higher taxes.

The plaintiffs cite *McCaslin* for the proposition that once improper influence on a jury is shown, no other evidence is necessary in order to require a new trial. I agree. In *McCaslin*, the plaintiff went to the business office of a juror and asked her to "do all you can to help me." *McCaslin*, 317 S.W.2d at 918. The court held this was an overt act that was so prejudicial that the burden of going forward with proof of harm is met by simply showing the improper act and nothing more. *Id.* at 921.

I would hold the bailiff's remarks to the jury panel amounted to improper contact between an officer of the court and the jury. Although the harm analysis is not necessary under point of error number one, it is under this point. Thus, under this point I would engage in the harm analysis required by TEX.R.APP.P. 81(b)(1), to determine whether the error amounted to such a denial of the plaintiffs' rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Ramos v. Champlin Pet. Co.*, 750 S.W.2d 873, 877 (Tex.App.—Corpus Christi 1988, writ denied).

The bailiff is an officer of the court. *Ex parte Daniels*, 722 S.W.2d 707, 710 (Tex.Cr. App.1987); *Ex parte Krupps*, 712 S.W.2d 144, 147 (Tex.Cr.App.1986). A presiding judge must conduct the trial in a fair and impartial manner and should refrain from making comments which result in prejudice to a litigant, or are calculated to influence the minds of the jury. *Brown v. Russell*, 703 S.W.2d 843, 847 (Tex.App.—Fort Worth 1986, no writ). We should consider the remark of the bailiff as if it had been uttered by the court. *See, e.g., Krupps*, 712 S.W.2d at 151 (party held in contempt for refusing to obey order of bailiff even though the judge had left the courtroom).

An appellate court should reverse a judgment because of improper comments or conduct on the part of the bailiff only if the comments are prejudicial. *See Brown*, 703 S.W.2d at 847 (improper comments of the trial judge). We should make our determination of whether the error probably caused

---

2. The plaintiffs promptly objected to the bailiff's remark to the panel by motion to strike the jury panel. The trial court overruled the motion.

the rendition of an improper judgment by examining the record as a whole. *Walker v. Texas Employers' Ins. Ass'n*, 155 Tex. 617, 291 S.W.2d 298, 301 (1956); *Brown*, 703 S.W.2d at 847. Thus, under this harm analysis, we should also consider the contacts between Pylant and Collier.

Crucial to an analysis of harm is the recognition of the constitutional right to an impartial jury. *See, e.g., Babcock v. Northwest Mem. Hosp.*, 767 S.W.2d 705, 709 (Tex.1989). The impartiality of the jury goes to the very integrity of the legal system. Historically, Texas courts have held that it is improper for a jury to be informed of whether or not a party is protected by insurance. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962). Here, the jury was given information that was more prejudicial than the mention of insurance by a lawyer. They were told—albeit obliquely—by an officer of the court that they would pay for any damage award to the plaintiff by higher taxes.

Trial judges (and their officers) must strive not only to give all parties a fair trial but also to maintain a high level of public trust and confidence. *Indemnity Ins. Co. v. McGee*, 356 S.W.2d 666, 668 (Tex.1962). The constitutional guarantee of an impartial jury is the cornerstone of our system of justice. The possibility that even one juror in the plaintiffs' case was biased or prejudiced offends our sense of justice.

Our jury system attempts to ascertain facts to arrive at the truth. Public policy demands that a jury hear the evidence in a case with absolute impartiality. Jury verdicts rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the jury system is based. The legitimacy of the judicial process is based on the public's respect and on its confidence that the system settles controversies impartially and fairly.

Texas law recognizes that multiple errors may result in reversal and remand for a new trial if the cumulative effect of the errors is harmful. *See Scoggins v. Curtiss & Taylor*, 148 Tex. 15, 219 S.W.2d 451, 453–54 (1949). This is particularly true when the errors

interact with each other, and augment their individual effects. *See id.* 219 S.W.2d at 454.

I would hold that the errors in this case were reasonably calculated to cause and probably did cause rendition of an improper judgment. The error in telling the panel, even obliquely, that the county was broke and taxes would have to be raised, when combined with the error of a juror consorting with an employee of the sheriff's office during the trial, was calculated to cause, and probably did cause the rendition of an improper verdict.

I would sustain point of error two.